STATE OF NORTH CAROLINA v. LARRY CHAVIS

No. COA99-1250

(Filed 29 December 2000)

**1. Discovery— medical and psychiatric history of witness— State not required to provide when not in State's possession**

The State was under no obligation to provide a defendant with medical and psychiatric history of a witness in a prosecution for statutory sexual offense and attempted statutory rape, because defendant presented no evidence the State actually had the witness's medical and psychiatric history in its possession, or that such history would have been favorable to defendant.

**2. Criminal Law— motion for continuance—not entitled to counsel of choice**

A defendant in a prosecution for statutory sexual offense and attempted statutory rape was not entitled to a continuance for purposes of obtaining counsel of his choice, because: (1) defendant's motion was made on the morning the trial was set to begin on the basis that defendant wanted to employ private counsel; (2) the private counsel that defendant indicated he wanted to employ was not in the courtroom at the time the motion was made, and there was no evidence defendant had made financial arrangements with this attorney; (3) all the State's witnesses were in the courtroom and defendant did not point to any conflict he had with his appointed counsel; and (4) this case had been rescheduled twice due to various conflicts.

**3. Evidence— incidents occurring two years apart—not habit**

The trial court did not abuse its discretion in a prosecution for statutory sexual offense and attempted statutory rape by finding that two incidents occurring approximately two years apart did not constitute a habit under N.C.G.S. § 8C-1, Rule 406, even though defendant sought to show the victim claimed an assault only for the purpose of obtaining a pregnancy test as she had done in the past.

**4. Evidence— prior crime or act—prior assault—common plan, scheme, system, or design**

The trial court did not err in a prosecution for statutory sexual offense and attempted statutory rape by allowing evidence of

STATE v. CHAVIS

[141 N.C. App. 553 (2000)]

defendant's 1990 assault of another victim under N.C.G.S. § 8C-1, Rule 404(b), because: (1) the evidence was properly admitted for the purpose of proving a plan, scheme, system, or design since the evidence on both instances were similar in nature in that the victims were of similar age, both visited various residences or places in which they were unfamiliar along with defendant, both victims were taken by automobile to isolated areas at night, and in both instances defendant told the victims something was wrong with the automobile, asked the victims to get out of the automobile, and then proceeded to sexually assault them; (2) the two charges are not too remote in time; (3) even though the evidence was improperly admitted for statutory sexual offense, the improper admission did not prejudice defendant when it was properly admitted to show a common scheme; and (4) the probative value of the prior bad act evidence was not substantially outweighed by its prejudicial impact.

**5. Witness— expert—clinical psychology—education and extensive experience**

The trial court did not abuse its discretion in a prosecution for statutory sexual offense and attempted statutory rape by allowing a witness to be received as an expert in clinical psychology, because the witness's education and extensive experience made her well-qualified to testify as an expert.

**6. Evidence— expert testimony—victim suffered from post-traumatic stress disorder—corroboration—no prejudicial error although improper to allege defendant's assault was triggering event**

The trial court did not err in a prosecution for statutory sexual offense and attempted statutory rape by allowing a clinical psychologist to testify that the victim suffered from post-traumatic stress disorder (PTSD) as a result of the 26 July 1997 incident, because: (1) the evidence was admissible for corroborative purposes to assist the jury in understanding the behavioral patterns of sexual assault victims; and (2) even though the psychologist was improperly permitted to testify that the 26 July 1997 assault by defendant was the "triggering event" of the PTSD, there was no prejudicial error since there was not a reasonable possibility that a different result would have been reached in the trial without this testimony.

**7. Jury— alleged juror misconduct—speaking to prosecuting attorney concerning juror's familiarity with defense witness**

The trial court did not abuse its discretion in a prosecution for statutory sexual offense and attempted statutory rape by concluding that a juror was not required to be removed even after the juror sought to speak with the prosecuting attorney concerning the juror's possible familiarity with one of defendant's witnesses, because: (1) the trial court conducted a voir dire examination of the juror to determine if there had been any prejudice to defendant; and (2) defendant has not shown how he was prejudiced or that the juror's ability to remain impartial was impacted.

**8. Evidence— defendant's statement to detective—not hearsay—no prejudicial error**

Although the trial court erred in a prosecution for statutory sexual offense and attempted statutory rape by concluding that defendant should not be allowed to cross-examine a detective concerning defendant's statements to the detective on the grounds that the statement was inadmissible hearsay, defendant was not prejudiced when there is no reasonable possibility a different result would have been reached at trial if the detective had been permitted to read defendant's statement to the jury.

**9. Sentencing— presumptive range—no error**

The trial court did not abuse its discretion in a prosecution for statutory sexual offense and attempted statutory rape by sentencing defendant within the presumptive range, because: (1) the trial court is required to take into account factors in aggravation and mitigation only when deviating from the presumptive range in sentencing; and (2) the trial court is not required to take into account any evidence offered in mitigation when it imposes the presumptive sentence.

Appeal by defendant from judgment dated 30 April 1999 by Judge Robert F. Floyd, Jr. in Robeson County Superior Court. Heard in the Court of Appeals 19 September 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General Sarah Ann Lannom, for the State.*

*Bowen & Berry, PLLC, by Sue A. Berry, for defendant-appellant.*

GREENE, Judge.

Larry Chavis (Defendant) appeals from a judgment entered after a jury rendered a verdict finding him guilty of a statutory sexual offense and of attempted statutory rape in violation of N.C. Gen. Stat. §§ 14-27.7A(a) and 14-27.7(a).

## Pre-trial

On 24 March 1999, Defendant sought discovery from the State of the "[m]edical and psychiatric history of [the prosecuting witness (M.F.P.)] admissible under Rule of Evidence 611(b) to impeach the witness'[] ability to perceive, retain, or narrate." The trial court ruled that the State was under "no duty to go out and find impeaching information with regard[] to its witnesses." The trial court, however, did indicate it would allow Defendant to inquire into those matters on cross-examination.

On 27 April 1999, Defendant's case was called for trial. At that time, Defendant sought a continuance to permit him to obtain alternate counsel.[1] The case was first set for trial in July 1998, "at which time the State was unable to proceed to trial because [Detective Ron Simmons (Simmons)] was on vacation." The case was then set for the early part of 1999, but "it was a short week and the court had other obligations." The lawyer whom Defendant sought to retain was not present in the courtroom and Defendant had not made any financial arrangements to hire the new lawyer. The prosecuting attorney indicated to the trial court that all the State's witnesses were present in court. The trial court, after questioning Defendant, denied Defendant's motion to continue because "there appear[ed] to be no conflict with regard to counsel. That issue is just now being brought to the [trial] court's attention immediately before the matter is to be tried. . . . The motion is being made unduly late . . . ."

## State's evidence

M.F.P. testified that during the summer of 1997, she visited with Defendant and his wife, Betty Chavis (Chavis), while her parents were on vacation. On 26 July 1997, Defendant, M.F.P., and M.F.P.'s sister "went [in an automobile] to visit people [Defendant] said were his sisters, . . . to a gas station[,] and some club that [Defendant] wanted to go to."

---

1. Defendant had appointed counsel in this matter.

After Defendant stopped and purchased beer, he said: "Well, I guess we'll go on home." Defendant, however, went down "some road where there were no [automobiles] . . . out in the sticks." While driving down this road, Defendant "was shaking the wheel really bad[ly] and he told [M.F.P.] something was wrong with the [automobile]." Defendant told M.F.P. he needed to pull over the automobile because he was scared to drive it home and needed to check it. Defendant got out of the automobile and began "l[]ying on the ground [and] looking at the tires." Defendant told M.F.P. to get out of the automobile and to shine the light for him.

As M.F.P. was standing outside the automobile, Defendant stood up in front of her and told her "Don't tell [Chavis]." Defendant then pushed M.F.P. against the automobile and started touching M.F.P. "all over [her] body." Defendant's hands "went under [M.F.P.'s] underwear and [she] felt his fingers or his finger go inside [her]." Defendant eventually stopped touching M.F.P. because an automobile "started coming down the road." When M.F.P. got into the automobile, "[Defendant] told [M.F.P.] that he was just playing, he just wanted to see what [M.F.P.] would do if something like that happened[,] if someone tried to hurt [her]." M.F.P. stated she was scratched and bruised by Defendant during the alleged assault.

After Defendant reached his residence, M.F.P. got out of the automobile and ran to the house of Eliza Jane Wilkins Painter (Painter), M.F.P.'s aunt. Painter called the Sheriff's Department and was told to bring M.F.P. to the station to speak with someone. M.F.P. spoke with Simmons, who took her statement.

On cross-examination, M.F.P. denied being involved in a physical fight with her brother. M.F.P. stated that after the incident, she "was supposed to have gotten checked out but . . . wouldn't let them"; instead, photographs of her were taken. Although M.F.P. denied requesting a pregnancy test at the hospital on 27 July 1997, Defendant produced medical records showing M.F.P. had requested a pregnancy test. Defendant attempted to question M.F.P. concerning an incident which occurred approximately two years prior to the July 1997 incident, but the State objected. On *voir dire*, Chavis testified that two years before the July 1997 incident, M.F.P. told Chavis "a man approached [M.F.P.] with a knife and pulled her in[to] the woods and raped her." Chavis stated M.F.P. made no request to get a medical exam, but did ask Chavis to go with her to get a pregnancy test. Because M.F.P. requested a pregnancy test at the hospital after the July 1997 event, Defendant sought to introduce the evidence of the

alleged prior sexual assault to show M.F.P.'s habit as to "when she's concerned about whether she's pregnant or not, to report a sexual assault, decline medical care and seek a pregnancy test." The trial court declined to permit Defendant to introduce evidence of the earlier incident, finding "the two incidents . . . [occurring] two years apart [do not constitute] a habit within the purview of [Rule] 406."

The State tendered Dr. Margaret Barnes (Dr. Barnes), a licensed clinical psychologist, as an expert "in the field of clinical psychology with a focus on behavior and treatment of post traumatic stress disorder [PTSD] and sexual assault victims." Dr. Barnes received her Masters in Psychology and her Ph.D. at the University of North Carolina at Greensboro with her primary "specialty or practice . . . in . . . anxiety disorders, including [PTSD]." Dr. Barnes interned for one year at High Point Mental Health with Family and Children Services and also interned for one year at Forsyth County Mental Health in Adult Services. Over Defendant's objection, the trial court received Dr. Barnes "as an expert in the field of clinical psychology."

During Dr. Barnes' testimony, the trial court gave the following limiting instruction:

> Members of the jury, you're about to hear evidence regarding [PTSD]. This evidence is to be considered by you only for the purpose of corroboration of other evidence if you find it does so. It is not to be considered by you as substantive evidence. That is, it may not be considered by you as proof of any fact in issue.

M.F.P. first came to see Dr. Barnes on 28 August 1997. Over the noted objection of Defendant, Dr. Barnes testified she diagnosed M.F.P. with PTSD. M.F.P.'s symptoms included "having a lot of flashbacks[,] . . . going into the shower and scrubbing herself raw[,] . . . [and] difficulty sleeping." Dr. Barnes was asked by the State if M.F.P. had described to her any recent event that might have constituted a "triggering event" for the PTSD. Dr. Barnes responded in pertinent part: "[M.F.P.] indicated that on July 26 of [1997], she was with the alleged perpetrator. . . . [M.F.P.'s] sister was in the [automobile] . . . and saw [the] whole thing happen."

M.F.P.'s brother testified he and M.F.P. had a disagreement on 26 July 1997, prior to Defendant and M.F.P. leaving to visit Chavis. M.F.P.'s brother denied the disagreement escalated to a physical altercation.

The State also introduced evidence by D.H., who relayed an event that occurred between her and Defendant on 23 December 1990. This event resulted in Defendant being convicted in January 1991 of assault and sentenced to a fifteen-year active sentence, of which he served approximately six years. This evidence was offered pursuant to Rule 404(b) to show Defendant's intent and common scheme. Over Defendant's objection, the trial court accepted the evidence under Rule 404(b) and allowed D.H. to testify about the 23 December 1990 assault, finding the following similarities between the 1990 assault and the 1997 alleged assault: the ages of the alleged victims were similar; the facts were similar; it appeared Defendant had been drinking; the victims visited various residences or places in which they were not familiar; the incidents occurred at night; the victims were taken by automobile to isolated areas; the sexual assaults occurred in isolated areas; Defendant told the victims something was wrong with the automobile; and once Defendant had the victims outside of the automobile, he proceeded to sexually assault them. The trial court then ruled, pursuant to Rule 403, that "the probative value outweighs any prejudicial effect of the conviction" and gave the following limiting instruction with respect to D.H.'s testimony:

> This evidence is being received for the purpose of showing that . . . Defendant had intent, which is a necessary element of the crime charged in this case, and that there existed in the mind of . . . Defendant a plan, scheme or system or design involving the crime charged in this case. If you believe this evidence which is being offered, you may consider it but only for the limited purposes for which it is being received.

During the course of the trial, it was brought to the trial court's attention that Juror No. 5 [the Juror] attempted to have contact with the prosecuting attorney in this case, despite the trial court's admonishments the jury "have no contact with the participants." The Juror sought to speak with the prosecuting attorney concerning a witness present in the courtroom he "thought [he] knew." The prosecuting attorney refused to speak with the Juror and he was told "[y]ou're a juror. [The prosecuting attorney] can't speak with you." After being told this, the Juror left and raised his concerns with the bailiff. The trial court conducted a *voir dire* examination and refused to remove the Juror, finding "[t]here appears to be nothing that would in any way affect [the Juror's] ability to proceed as originally announced during the jury selection process and be a fair and impartial juror."

The State also called Simmons, who testified concerning his investigation of the July 1997 incident and M.F.P.'s version of what happened. On cross-examination, Defendant attempted to have Simmons read, to the jury, Defendant's statement given to Simmons shortly after the incident, and the State objected. The trial court sustained the State's objection on the ground it was inadmissible hearsay. On re-direct, Simmons was permitted to testify, over Defendant's objection, he obtained the arrest warrants after speaking with Defendant. On re-cross, Defendant again attempted to have Simmons read Defendant's statement because, Defendant argued, the State's inquiry as to when Simmons obtained the warrants made it "appear to the jury that [Simmons] got them in response to something [Defendant] said." The trial court again ruled Defendant's statement was inadmissible. Defendant then asked Simmons if the warrants in this case were obtained "despite what [Defendant] had told [Simmons]." The trial court sustained the State's objection to this question.

### Defendant's evidence

Chavis testified that during M.F.P.'s visit, M.F.P. asked for directions so her boyfriend could visit. Defendant refused to let M.F.P.'s boyfriend visit and M.F.P. responded, " 'If it's the last thing I do, I'll fix you, you S.O.B.' " During M.F.P.'s visit, Chavis saw M.F.P. with marijuana and asked her not to use the substance while in her home.

Katrina Campbell (Campbell), Chavis's sister, testified that on 26 July 1997, she observed M.F.P. and M.F.P.'s brother "[f]ist fighting and cussing." Campbell testified M.F.P.'s brother "had been scratching [M.F.P.] up, [and] [M.F.P.] had scratched him back and was hitting him." After the altercation, M.F.P. "had scratches on her face, her arms, and her legs . . . and bruises." Martin Campbell, Campbell's husband, also stated M.F.P. had scratches on her after a fight with her brother. Painter testified M.F.P. was doing drugs and she observed the fight between M.F.P. and her brother. Painter, who also was present during M.F.P.'s visit to the hospital, heard M.F.P. state "she wanted to get a pregnancy test." On cross-examination, Painter verified M.F.P.'s version of the events at trial was the same as the version given by M.F.P. to Painter on 27 July 1997.

### Sentencing

During the sentencing phase of Defendant's trial, Defendant argued mitigating factors were shown at trial and included:

STATE v. CHAVIS

[141 N.C. App. 553 (2000)]

Defendant supports his family; Defendant has a support system in the community; and Defendant is gainfully employed. The trial court declined to make any written findings and sentenced Defendant within the "presumptive range."

---

The issues are whether: (I) the State is under an obligation to provide Defendant with medical and psychiatric history of a witness, when that history is not in its possession; (II) Defendant was entitled to a continuance for purposes of obtaining counsel of his choice; (III) two incidents occurring approximately two years apart constitute habit, within the meaning of Rule 406; (IV) evidence of Defendant's 1990 assault of D.H. was properly admitted under Rule 404(b) to prove intent and/or common scheme; (V) Dr. Barnes was properly received as an expert in clinical psychology; (VI) it was proper to allow Dr. Barnes to testify that M.F.P. was suffering from PTSD as a result of the 26 July 1997 incident, and if not, whether the erroneous admission of the testimony resulted in prejudicial error; (VII) a juror must be removed for failing to abide by the trial court's instructions; (VIII) Defendant should have been allowed to cross-examine Simmons concerning Defendant's statement to Simmons; and (IX) the trial court erred in sentencing Defendant within the presumptive range.

I

**[1]** A defendant is constitutionally entitled to all exculpatory evidence, including impeachment evidence, in the possession of the State. *State v. Soyars*, 332 N.C. 47, 63, 418 S.E.2d 480, 490 (1992). The State, however, is under a duty to disclose only those matters in its possession and "is not required to conduct an independent investigation" to locate evidence favorable to a defendant. *State v. Smith*, 337 N.C. 658, 664, 447 S.E.2d 376, 379 (1994).

In this case, Defendant presented no evidence the State actually had M.F.P.'s medical and psychiatric history in its possession or that such history would have been favorable to Defendant. Accordingly, the State was under no obligation to obtain and disclose this information to Defendant.

II

**[2]** A motion to continue based on a defendant's request to obtain private counsel raises a constitutional question and is thus fully reviewable by the appellate court. *State v. Searles*, 304 N.C. 149, 153, 282

S.E.2d 430, 433 (1981); *State v. Little*, 56 N.C. App. 765, 768, 290 S.E.2d 393, 395, *appeal dismissed*, 306 N.C. 390, 294 S.E.2d 217 (1982). The right to retain private counsel is not absolute and is balanced against "the need for speedy disposition of the criminal charges and the orderly administration of the judicial process." *State v. Foster*, 105 N.C. App. 581, 584, 414 S.E.2d 91, 92 (1992).

In this case, Defendant's motion was made on the morning the trial was set to begin on the basis Defendant wanted to employ private counsel. The private counsel Defendant indicated he wanted to employ was not in the courtroom at the time the motion was made and there was no evidence Defendant had made financial arrangements with this or any other private attorney. The record shows all the State's witnesses were in the courtroom and Defendant did not point to any conflict he had with his appointed attorney. Finally, this case had been rescheduled twice due to various conflicts.

On this record, the trial court did not err in denying Defendant's motion to continue.

### III

[3] Evidence of a person's habit, "whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person . . . on a particular occasion was in conformity with the habit." N.C.G.S. § 8C-1, Rule 406 (1999). In deciding whether specific instances constitute habit, the trial court should consider: the number of instances, whether the instances are similar, and the regularity of the instances. *Crawford v. Fayez*, 112 N.C. App. 328, 335, 435 S.E.2d 545, 550 (1993), *disc. review denied*, 335 N.C. 553, 441 S.E.2d 113 (1994). Whether instances constitute habit "is a question to be decided on a case-by-case basis, and the trial court's rulings thereon will not be disturbed absent an abuse of discretion." *Id.* (citing N.C.G.S. § 8C-1, Rule 104 (1992)).

In this case, Defendant sought to examine M.F.P. about a 1995 alleged assault which Defendant contends M.F.P. reported for the sole purpose of obtaining a pregnancy test. It is Defendant's contention in this case that he did not assault M.F.P. and she claimed an assault only for the purpose of obtaining a pregnancy test. The trial court denied admissibility of this evidence because it believed the "two incidents" occurring "two years apart" were not sufficient to constitute a habit within the meaning of Rule 406. We cannot hold this constitutes an abuse of discretion.

IV

A

*Relevancy*

[4] "Evidence of other 'crimes, wrongs or acts' [is] not admissible to 'show that the defendant has the propensity or disposition to commit an offense [of] the nature of the crime charged.' " *State v. Elliott*, 137 N.C. App. 282, 285, 528 S.E.2d 32, 35 (quoting *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990)), *reversed on other grounds*, ⸺ N.C. ⸺, 535 S.E.2d 32 (2000); N.C.G.S. § 8C-1, Rule 404(b) (1999). This evidence, however, may be admissible if it is relevant for some other purpose. N.C.G.S. § 8C-1, Rule 404(b); *State v. Bagley*, 321 N.C. 201, 206, 362 S.E.2d 244, 247 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988). "The evidence is relevant for some other purpose if it 'tends to prove a material fact in issue in the crime charged.' " *Elliott*, 137 N.C. App. at 285, 528 S.E.2d at 35 (quoting *State v. Johnson*, 317 N.C. 417, 425, 347 S.E.2d 7, 12 (1986)). In making this evaluation, the trial court must reject the relevancy of the evidence if it "does not clearly perceive the connection between the extraneous criminal transaction and the crime charged." *Id.* at 286, 528 S.E.2d at 35 (citations omitted).

*Common scheme*

The trial court admitted evidence of the 1990 assault for the purpose of proving plan, scheme, system or design. Evidence of other crimes is material and, therefore, relevant if it "tends to establish a . . . scheme embracing the commission of a series of crimes so related to each other that proof of one or more tends to prove the crime charged and to connect the accused with its commission." *State v. Bean*, 55 N.C. App. 247, 249, 284 S.E.2d 760, 761 (1981), *disc. review denied*, 305 N.C. 303, 290 S.E.2d 704 (1982). The crimes are related if they are sufficiently similar and not too remote in time. *See State v. McKinney*, 110 N.C. App. 365, 372, 430 S.E.2d 300, 304, *appeal dismissed, disc. review denied, and cert. denied*, 334 N.C. 437, 433 S.E.2d 182 (1993).

In this case, the 1990 assault and the current charges are similar in nature. In both instances the victims, similar in age, visited various residences or places in which they were unfamiliar and then were taken by automobile to isolated areas at night. During both instances, Defendant told the victims something was wrong with the automobile, asked the victims to get out of the automobile, and then proceeded to sexually assault them.

Likewise, the 1990 assault and the current charges are not too remote in time. Although approximately seven years elapsed between the 1990 assault and the current charges, some six of those years Defendant was in prison and those six years are not to be considered in evaluating remoteness. *See State v. Davis*, 101 N.C. App. 12, 20-21, 398 S.E.2d 645, 650 (1990), *appeal dismissed and disc. review denied*, 328 N.C. 574, 403 S.E.2d 516 (1991). Accordingly, the 1990 assault was relevant evidence and was properly admitted under Rule 404(b) to show common scheme.

### Intent

The trial court also admitted evidence of Defendant's previous assault on D.H. to show Defendant's intent to commit a statutory sexual offense and an attempted statutory rape. Intent is not an element of statutory sexual offense and statutory rape. *State v. Murry*, 277 N.C. 197, 203, 176 S.E.2d 738, 742 (1970). Intent is an element of an attempt to commit a crime. *State v. Coble*, 351 N.C. 448, 449, 527 S.E.2d 45, 46 (2000). Assuming the existence of a crime of attempted statutory rape, *see id.* at 451, 527 S.E.2d at 48 (logically impossible "for a person to specifically intend to commit a form of murder which does not have, as an element, specific intent to kill"), an issue not argued by Defendant in this case, the evidence of the 1990 assault was relevant and thus admissible to prove intent under Rule 404(b). It was not relevant and thus not admissible to prove intent to commit statutory sexual offense. The improper admission of this evidence, however, did not prejudice Defendant because it was properly admitted to show common scheme. *See State v. Haskins*, 104 N.C. App. 675, 683, 411 S.E.2d 376, 382 (1991) ("no prejudicial error where at least one of the two purposes for which the prior act evidence was admitted was correct"), *disc. review denied*, 331 N.C. 287, 417 S.E.2d 256 (1992).

### B

### Unfair prejudice

Although we have determined the 1990 assault is relevant for some purpose(s) under 404(b), it may nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *State v. Wallace*, 104 N.C. App. 498, 503, 410 S.E.2d 226, 229 (1991) (citing N.C.G.S. § 8C-1, Rule 403 (1988)), *disc. review denied*, 331 N.C. 290, 416 S.E.2d 398, *cert. denied*, 506 U.S. 915, 121 L. Ed. 2d 241 (1992). The question of whether evidence is unfairly prejudicial "is a matter left to the sound discretion of the trial court." *Haskins*, 104 N.C. App. at 680, 411 S.E.2d at 381.

In this case, the trial court admitted the evidence of Defendant's 1990 assault of D.H. for the limited purposes of proving a common scheme and Defendant's intent. In admitting the evidence, the trial court found the probative value of the testimony outweighed any prejudicial effect of the conviction. We cannot hold this constitutes an abuse of discretion. *See State v. Penland*, 343 N.C. 634, 654, 472 S.E.2d 734, 745 (1996) ("[i]n light of the limiting instruction, the probative value of [the prior bad act evidence] was not substantially outweighed by its prejudicial impact"), *cert. denied*, 519 U.S. 1098, 136 L. Ed. 2d 725 (1997).

## V

**[5]** A witness may be "qualified as an expert by knowledge, skill, experience, training, or education," and may testify in the form of an opinion "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." N.C.G.S. § 8C-1, Rule 702(a) (1999). To qualify as an expert, the witness need only be "better qualified than the jury as to the subject at hand." *State v. Davis*, 106 N.C. App. 596, 601, 418 S.E.2d 263, 267 (1992) (citations omitted), *disc. review denied*, 333 N.C. 347, 426 S.E.2d 710 (1993). Whether a witness qualifies as an expert is "exclusively within the trial judge's discretion," and should " 'not be reversed on appeal absent a complete lack of evidence to support his ruling.' " *Id.* (quoting *State v. Howard*, 78 N.C. App. 262, 270, 337 S.E.2d 598, 603 (1985), *appeal dismissed and disc. review denied*, 316 N.C. 198, 341 S.E.2d 581 (1986)).

The evidence shows Dr. Barnes has her masters in psychology, has a Ph.D., and is a licensed clinical psychologist who specializes in anxiety disorders, including PTSD. Given Dr. Barnes' education and extensive experience, she was well qualified to testify as an expert, and her testimony was properly admitted as expert testimony. Accordingly, the trial court did not abuse its discretion in qualifying Dr. Barnes as an expert and the record supports this ruling.

## VI

**[6]** Evidence from an expert that a prosecuting witness is suffering from PTSD is admissible, for corroborative purposes, *State v. Hall*, 330 N.C. 808, 821, 412 S.E.2d 883, 890 (1992), to assist the jury in understanding the behavioral patterns of sexual assault victims, *id.* at 822, 412 S.E.2d at 891; *State v. Huang*, 99 N.C. App. 658, 664, 394 S.E.2d 279, 283, *disc. review denied*, 327 N.C. 639, 399 S.E.2d 127

(1990). The expert witness may not, however, explicitly or implicitly indicate the PTSD was caused or contributed to by the actions of the defendant that are the subject of the trial. *State v. Hensley*, 120 N.C. App. 313, 319, 462 S.E.2d 550, 553-54 (1995). On this factual question, whether a defendant actually committed the act with which he is charged, the expert is "in no better position to have an opinion than the jury." *State v. Wilkerson*, 295 N.C. 559, 570, 247 S.E.2d 905, 911 (1978).

In this case, the trial court allowed Dr. Barnes to testify as to M.F.P.'s PTSD. As the trial court instructed the jury to consider this evidence only for corroborative purposes, the evidence was properly admitted to assist the jury in evaluating the credibility of M.F.P.'s testimony. It was error, however, for the trial court to permit Dr. Barnes to testify that the 26 July 1997 assault by Defendant was the "triggering event" of the PTSD. This testimony directly implicated Defendant as the person who sexually assaulted M.F.P. and was thus not admissible, either as substantive or corroborative evidence.

*Prejudicial error*

Defendant argues admission of Dr. Barnes' testimony concerning the triggering event was prejudicial error because of conflicting evidence at trial. We disagree.

The erroneous admission of evidence requires a new trial only when the error is prejudicial. *State v. Locklear*, 349 N.C. 118, 149, 505 S.E.2d 277, 295 (1998), *cert. denied*, 526 U.S. 1075, 143 L. Ed. 2d 559 (1999). To show prejudicial error, a defendant has the burden of showing that "there was a reasonable possibility that a different result would have been reached at trial if such error had not occurred." *Id.*; N.C.G.S. § 15A-1443(a) (1999).

In this case, M.F.P. testified about the alleged sexual assault in detail and Defendant's alleged assault of M.F.P. is very similar to Defendant's assault of D.H. M.F.P. gave the same account at trial she had previously given to Painter and Simmons. In addition, there was physical evidence of scratches and bruises on M.F.P, consistent with M.F.P.'s testimony. Although there is some evidence these scratches and bruises came from an altercation with M.F.P.'s brother, the brother denies any altercation. This limited conflict in the evidence is not sufficient to support a reasonable possibility a different result would have been reached at trial if Dr. Barnes had not been allowed

STATE v. CHAVIS

[141 N.C. App. 553 (2000)]

to testify about the triggering event of M.F.P.'s PTSD. The admission of this testimony, therefore, was not prejudicial error.

## VII

**[7]** The trial court, in its discretion, determines whether juror misconduct has occurred and if so, whether the defendant was prejudiced as a result of such conduct. *See State v. Williams*, 330 N.C. 579, 583, 411 S.E.2d 814, 817 (1992). Absent a clear abuse of discretion, the trial court's ruling on juror misconduct will not be disturbed on appeal. *See State v. Sneeden*, 274 N.C. 498, 504, 164 S.E.2d 190, 194-95 (1968).

In this case, the Juror sought to speak with the prosecuting attorney concerning the Juror's possible familiarity with one of Defendant's witnesses. The trial court conducted a *voir dire* examination of the Juror to determine if there had been any prejudice to Defendant. Defendant has not shown how he was prejudiced by the Juror's conduct or that the Juror's ability to remain impartial was impacted.[2]

Accordingly, the trial court did not abuse its discretion in denying Defendant's motion to remove the Juror.

## VIII

**[8]** Defendant contends the trial court committed reversible error in not permitting Simmons to disclose to the jury the contents of the statement Defendant made to Simmons. Simmons testified he obtained the warrant against Defendant immediately after talking with Defendant and Defendant wanted the jury to know that there was nothing in Defendant's statement that would support the warrant.

The trial court rejected Defendant's request on the ground the statement was inadmissible hearsay. We disagree. A statement made by a defendant to another person is not hearsay and is admissible when the statement explains the subsequent conduct of the person to whom the statement was made. *Coffey*, 326 N.C. at 282, 389 S.E.2d at 56; N.C.G.S. § 8C-1, Rule 801(c) (1999).

---

2. Defendant argues the Juror's misconduct, along with responses during jury selection, demonstrate the Juror is not fair and impartial. Defendant, however, does not point to anything in the record to reflect Defendant sought to have the Juror removed during jury selection and did not assign error to the trial court permitting the Juror to initially be impaneled. Accordingly, we do not address this argument. *See* N.C.R. App. P. 10(a) (the scope of appellate review is limited to assignments of error set out in the record).

STATE v. CHAVIS

[141 N.C. App. 553 (2000)]

In this case, Defendant sought to disclose his statement to Simmons in an effort to place some context on or explain why Simmons subsequently sought a warrant for Defendant's arrest. Thus, Defendant's written statement to Simmons was not hearsay and the trial court erred in denying Defendant's request. Not every error, however, mandates a new trial, *Locklear*, 349 N.C. at 149, 505 S.E.2d at 295, and in this case there is no reasonable possibility, for the reasons previously given (in our discussion of prejudicial error in the context of Dr. Barnes' testimony), a different result would have been reached at trial if Simmons had been permitted to read Defendant's statement to the jury.

IX

[9] Defendant finally contends the trial court abused its discretion in failing to impose a sentence less than the presumptive range, on the grounds of undisputed evidence in mitigation. We disagree. This Court has held the trial court is required to take "into account factors in aggravation and mitigation *only* when deviating from the presumptive range in sentencing." *State v. Caldwell*, 125 N.C. App. 161, 162, 479 S.E.2d 282, 283 (1997) (emphasis in original). As the trial court imposed the presumptive sentence in this case, it was not required to take into account any evidence offered in mitigation.

No error.[3]

Judges MARTIN and EDMUNDS concur.

---

    3 We do not address Defendant's assignment of error concerning an instruction given to the jury during jury instructions. Defendant has failed to cite any authority in his brief in support of this argument, and, therefore, this argument is deemed abandoned. *See* N.C.R. App. P. 28(b)(5).