An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-669

Filed 4 February 2026

Randolph County, Nos. 20CR053002-750, 20CR053003-750

STATE OF NORTH CAROLINA

v.

ROBERT FARREL KNIEST, III

Appeal by defendant from judgment entered 25 August 2023 by Judge Rebecca W. Holt in Randolph County Superior Court. Heard in the Court of Appeals 14 January 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Christopher R. McLennan, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Callie S. Thomas, for defendant.*

ARROWOOD, Judge.

Robert Farrel Kniest, III ("defendant") appeals from judgment entered after jury trial, where defendant was found guilty on one count of taking indecent liberties with a child and not guilty on two counts of statutory sex offenses with a child. Defendant contends that the trial court committed reversible error by denying his

request for a continuance because he and his counsel had reached an "absolute impasse" between the end of the State's evidence and the beginning of his defense's evidence. For the following reasons, we find no error and affirm the trial court's judgment.

## I.    Background

Defendant was the live-in boyfriend of Crystal Thomas ("Ms. Thomas"), who is mother to four children, including J.S.[1] When J.S. was thirteen years old, she reported to her mother that defendant repeatedly sexually abused her over several years, beginning when she was approximately eight years old. J.S. also made accusations of sexually inappropriate behavior against several other individuals. Three months after reporting the alleged abuse to police, J.S. underwent a medical examination and interview at Emmy's House, a child advocacy center specializing in incidents of physical or sexual abuse against minors. In the interview, J.S. repeated her accusations against defendant but stated that he was the only person who had sexually abused her. J.S. was removed from the home and placed in foster care. Her siblings were removed from the home for reasons unrelated to her accusations. At trial, J.S. reiterated her accusations against defendant, but said that she had lied about the other alleged abusers in the Emmy's House interview and that her prior accusations were true.

---

[1] Because this individual is a minor, we use these initials throughout.

At the end of the second day of trial, the State rested its case. On the morning of the trial's third day, despite not having previously raised concerns with the court, defendant's counsel, Jonathan Megerian, said that defendant fired him only moments before the hearing had been set to commence. Defendant then claimed that Mr. Megerian had not prepared for the case and expressed disagreement with his choice of defense witnesses and his cross-examination of J.S., asking for a one-day continuance to retain alternate private counsel.

The trial court denied the request: "You certainly have the right to represent yourself, but we are in the middle of this trial and we are going forward with this trial . . . unless you have a lawyer that's prepared to go forward today, that's not happening." The court acknowledged that Mr. Megerian "made certain decisions, strategic decisions that you may disagree with, but we are going forward with this trial" and gave defendant the opportunity to represent himself or to have his counsel appointed as stand-by, explaining that his role would be very limited. Meanwhile, Mr. Megerian assured the court that, although he was "about as irritated with [defendant] as [he had] ever been with a client," he was committed to representing him zealously. After additional discussion with defendant, the court asked defendant directly, "So you have decided that you are going to keep Mr. Megerian as your counsel?" and defendant replied, "I have to."

Both before and after his request for a continuance, defendant's conduct throughout the trial was disruptive to the proceedings. Despite numerous warnings,

defendant was frequently late or missing from court sessions. When present, defendant repeatedly spoke out of turn and used profane language, such that the court threatened to hold him in contempt.

Defendant testified in his defense and categorically denied all accusations of sexual impropriety, and Ms. Thomas testified that she believed J.S. was lying. The jury returned a guilty verdict on taking indecent liberties with a child under the age of thirteen and verdicts of not guilty as to the other charges, and the trial court imposed a sentence of 19 to 32 months imprisonment and thirty years of registration as a sex offender. Defendant gave oral notice of appeal in open court.

## II.    Analysis

"A motion to continue based on a defendant's request to obtain private counsel raises a constitutional question and is fully reviewable by the appellate court." *State v. Chavis*, 141 N.C. App. 553, 561 (2000). To review the trial court's action upon such a motion, we examine the particular circumstances presented by the record on appeal. *State v. Branch*, 306 N.C. 101, 104 (1982). Denial of such a motion is grounds for a new trial only upon a showing that the denial was erroneous and that the case was prejudiced by the trial court's error. *Id*.

Both the North Carolina and United States Constitutions guarantee an accused defendant's right to retain counsel, including the right to counsel of the defendant's choosing. *State v. McFadden* 292 N.C. 609, 611 (1977). This right can be limited in situations where the trial court must balance the need for "speedy

distribution of the criminal charges and the orderly administration of the judicial process." *Chavis*, 141 N.C. App. at 562. The trial court has discretion to deny a defendant's request for a continuance to hire their preferred counsel where such continuance would result in procedural disruption or significant prejudice which would be "unreasonable under the circumstances of the particular case." *State v. Goodwin*, 267 N.C. App. 437, 441 (2019) (citation omitted). Further, our Supreme Court has held that this right may be lost where defendant "perverts that right to a weapon for the purpose of obstructing and delaying his trial." *McFadden*, 292 N.C. at 616.

Defendant's argument on appeal rests on his assertion that he and Mr. Megerian had reached an "absolute impasse," relying on the distinction expressed in *State v. Ali*, 329 N.C. 394, 403 (1991). There, our Supreme Court held that "tactical decisions, such as which witnesses to call [and] whether and how to conduct cross-examinations . . . are ultimately the province of the lawyer. . . . However, when counsel and a fully informed criminal defendant client reach an absolute impasse as to such tactical decisions, the client's wishes must control." *Id.* at 404 (cleaned up). When an "absolute impasse" occurs "on a tactical matter," the court reversibly errs if it "allow[s] the attorney's decision to prevail over the defendant's wishes." *State v. Holliday*, 289 N.C. App. 667, 674 (2023).

Our case law distinguishes mere disagreements on tactical issues from absolute impasses. *See State v. Henderson*, 298 N.C. App. 771, 782 (2025). Unless

the appellate court can determine from the record that defendant and his counsel reached an absolute impasse, and not that defendant merely sought to stall the court's efficient procedure, the trial court's decision will not be disturbed. *State v. Floyd*, 369 N.C. 329, 341 (2016).

After careful analysis of the record, we first note that the court's observations were appropriate and reasonable. Addressing the revelation that Mr. Megerian had just been fired, the court promptly acknowledged the disruptive potential of the development: "If you fire your attorney, you are going to need to proceed representing yourself in this matter. We are at trial. The State have put on their evidence. It is your turn to put on any evidence . . . . [I]f you understand that you are going to be going forward representing yourself, then so be it . . . my job is to make sure you understand that." Indeed, defendant's request directly challenged the court's responsibility to oversee an orderly and timely procedure throughout trial, and it would be counterproductive, imprudent, and unrealistic for defendant to locate and hire a new attorney in one day between the close of the State's evidence and the beginning of the defense's presentation, while an impaneled jury of defendant's peers is kept waiting.

The record is clear that defendant and Mr. Megerian had tactical disagreements about the manner of cross-examination and the selection of defense witnesses. But on the question of whether they reached absolute impasse, the record is wanting. Despite his evident frustration, Mr. Megerian expressed his willingness

and ability to continue zealous representation through the end of the trial. The record also indicates that defendant's specified frustrations about Mr. Megerian's tactics were likely premature. Defendant was particularly upset that Mr. Megerian chose not to aggressively challenge J.S. about her testimony describing which side of defendant's penis had a prominent genital wart. However, defendant took his opportunity to testify and directly contradict this part of J.S.'s testimony, and Mr. Megerian most likely had sound and judicious reasons for preferring to wait until his testimony to introduce this evidence, rather than directly contesting a minor witness before the jury in a child sex abuse trial.

Lastly, defendant's own voluntary behavior in court, as transcribed throughout the record, points to a conscious effort to frustrate the proceedings. Through persistent lateness, defendant waived his right to be present for one portion of the trial. And because of his consistent interruptions and profanity, the court threatened to hold him in contempt after repeated warnings and castigation. Taken in combination with both the timing of and defendant's stated reasoning for his continuance request, defendant's obstreperous personal conduct makes it much more difficult to see the continuance as anything but than an ill-advised attempt to short-circuit the administration of justice. We echo our state Supreme Court: such attempts are troubling perversions of a criminal defendant's indispensable Constitutional right to a competent defense. *McFadden*, 292 N.C. at 616. In sum, the record before us does not clearly show the absolute impasse that defendant claims he and his counsel

reached.

Therefore, because the record before us does not clearly show the existence of an absolute impasse, we are unable to find that the trial court erred in denying defendant's request for a continuance to hire a new lawyer.

### III.  Conclusion

Because the trial court's decision to deny defendant's request for a one-day continuance was proper, we find no error.  Accordingly, the judgment of the trial court is affirmed.

NO ERROR

Judges GRIFFIN and STADING concur.

Report per Rule 30(e).