STATE OF NORTH CAROLINA v. LONNIE DALE EASTER

No. 9017SC66

(Filed 18 December 1990)

1. **Appeal and Error § 147 (NCI4th) — court reporter's certificate omitted — raised for first time in brief — issue not considered**

    The State's contention in a homicide prosecution that the appeal should be dismissed because the record does not contain the court reporter's certification that copies of the completed transcript were delivered to the parties was not addressed since the State raised the issue for the first time in its brief and not by filing a motion for dismissal. N.C. Rule of Appellate Procedure 7(b)(2) (1990).

    **Am Jur 2d, Appeal and Error §§ 553, 554.**

2. **Criminal Law § 1123 (NCI4th) — voluntary manslaughter — sentencing — premeditation and deliberation as aggravating factor — evidence sufficient**

    There was sufficient evidence to find premeditation and deliberation as an aggravating factor when sentencing defendant for voluntary manslaughter where defendant drove from Mount Airy to Lambsburg, Virginia upon learning that his wife had dated Taylor, the victim; defendant carried with him a .45 caliber pistol; Taylor's wife told defendant that Taylor was living in Mount Airy; defendant told Taylor's wife that he would "hit him one time for you too"; defendant went the next day to the house where Taylor was living; defendant was armed with the pistol; defendant fired four shots into Taylor's truck and two shots into the house when he found

no one home; defendant finally confronted Taylor and, after a heated argument, told Taylor that he would be back that night to "get him"; defendant tried to back over Taylor as he was leaving; and, while defendant contends that Taylor first threatened to kill him as he was walking towards defendant and his wife in the final confrontation, all of the gunshot wounds to Taylor's body were in his back and the record indicates that there was more than one wound.

**Am Jur 2d, Homicide §§ 439, 554.**

3. **Criminal Law § 1123 (NCI4th) — voluntary manslaughter — sentencing — premeditation and deliberation — related to purposes of sentencing**

Premeditation and deliberation are appropriate nonstatutory aggravating factors when defendant pleads guilty to voluntary manslaughter. The North Carolina Supreme Court has held that premeditation and deliberation are reasonably related to the purposes of sentencing when a defendant pleads guilty to second degree murder, and there is no distinction which would make premeditation and deliberation reasonably related to the purposes of sentencing for murder but not for voluntary manslaughter. Moreover, premeditation and deliberation are not inherent to second degree murder or voluntary manslaughter.

**Am Jur 2d, Homicide §§ 439, 554.**

4. **Criminal Law §§ 1239, 1240 (NCI4th) — manslaughter — sentencing — mitigating factors — provocation and threat — not found**

The trial court did not err when sentencing defendant for voluntary manslaughter by failing to find the statutory mitigating factors that the offense was committed under strong provocation or threat where the evidence was conflicting, so that the trial court could find that statements made by defendant and his wife were contradicted and lacked credibility.

**Am Jur 2d, Homicide §§ 64, 65, 290, 552.**

5. **Criminal Law § 1242 (NCI4th) — manslaughter — sentencing — mitigating factor — extenuating relationship — not found**

The trial court did not err by failing to find as a mitigating factor when sentencing defendant for voluntary manslaughter that there was an extenuating relationship between defendant

and the victim based on the alleged adulterous relationship between the victim and defendant's wife. The record states only that defendant's wife dated the victim an unspecified number of times, there is a conflict as to whether the dating occurred one year or three years before the shooting, and there is no inference in the record that the date or dates escalated into the adulterous relationship argued by the defendant. Furthermore, there is nothing on the face of the statute to indicate that the legislature meant to provide shorter prison terms for defendants motivated by jealousy or rage.

**Am Jur 2d, Homicide §§ 64, 65, 290, 552.**

6. **Criminal Law § 1430 (NCI4th) — manslaughter — sentencing — restitution as condition for work release**

The trial court when sentencing defendant for voluntary manslaughter was without authority to order that defendant pay one-third of his income to the clerk of court for disbursement to the minor children of the victim as a condition of work release. The language in N.C.G.S. § 15A-1343(b) referring to an "order" for restitution or reparation is made inapplicable by the language of N.C.G.S. § 148-33.2(c), which makes clear that the restitution or reparation may be only recommended. Moreover, an applicable provision of N.C.G.S. § 15A-1343 requires that the amount of restitution must be limited to that supported by the record, and the evidence in this case does not support restitution in the amount of one-third of whatever defendant's income may be for an undetermined period of time.

**Am Jur 2d, Criminal Law §§ 572, 574.**

**Propriety of condition of probation which requires defendant convicted of crime of violence to make reparation to injured victim. 79 ALR3d 976.**

APPEAL by defendant from judgment entered 8 August 1989 by *Judge James C. Davis* in SURRY County Superior Court. Heard in the Court of Appeals 26 September 1990.

*Lacy H. Thornburg, Attorney General, by E. Burke Haywood, Assistant Attorney General, for the State.*

*Glover & Petersen, P.A., by James R. Glover and Ann B. Petersen, for defendant-appellant.*

STATE v. EASTER

[101 N.C. App. 36 (1990)]

GREENE, Judge.

The defendant was charged with murder, injury to real property and injury to personal property. He entered pleas of guilty to voluntary manslaughter, injury to real property and injury to personal property on 1 August 1989. Judgments were entered after a sentencing hearing on 8 August 1989. The trial court sentenced the defendant to twenty years imprisonment for the offense of voluntary manslaughter. The other two offenses were consolidated for judgment and the defendant was sentenced to two years imprisonment to begin at the expiration of the twenty-year sentence. The defendant appeals.

At the sentencing hearing, the State introduced testimony which tends to show that on 17 September 1988, the defendant's wife told the defendant that she had dated one Mike Taylor approximately three years earlier. That same day the defendant left his home in Mount Airy and traveled to the home of Taylor's wife in Lambsburg, Virginia. The defendant took with him a .45-caliber pistol.

In Virginia, the defendant told Taylor's wife that he was upset because Taylor had dated his wife. Taylor's wife told the defendant that she and Taylor were separated, and that Taylor lived on Race Track Road in Mount Airy. As the defendant was leaving Mrs. Taylor's residence he said, "I'll hit him one time for you too."

The following afternoon, the defendant and his wife went to Bradley Hull's house on Race Track Road, the house in which Taylor was supposed to be living. Taylor and Hull had gone to Atlanta the day before to play in a softball tournament. Finding no one at home, the defendant fired four shots from the .45-caliber pistol into Taylor's truck which was parked in the yard, then fired two shots into the house. The defendant and his wife then went to the home of the defendant's father-in-law in Mount Airy. They left their child there and drove back to Bradley Hull's house on Race Track Road.

By the time the defendant and his wife started back to Hull's house, Hull and Taylor had returned home from Atlanta. Soon after Hull and Taylor arrived they noticed the damage to the truck and the house. Two women also arrived at Hull's house a few minutes later. While everyone else remained inside the house, Taylor went outside.

STATE v. EASTER

[101 N.C. App. 36 (1990)]

A short while later, the defendant and his wife pulled into the driveway and parked. Taylor and the defendant began arguing in the driveway, with the defendant "cussing and raising hell." The argument brought Hull and the two women outside. According to the defendant's wife, the defendant told Taylor that he would be back that night to "get him."

The defendant then backed out of the driveway at a high rate of speed and tried to back over Taylor. After driving a short distance down the highway the defendant stopped his car and got out. He asked Hull, "Do you want some of this?" Hull replied, "You damn right, buddy, if you done this . . . here." The defendant then got back in his car and drove off.

After the defendant left, Taylor asked someone to get his gun and bullets from inside the house. Taylor loaded his .38-caliber pistol and drove off in Hull's truck alone.

The defendant drove to a Coca-Cola plant approximately two or three miles away. The defendant pulled in to switch drivers because he did not have a valid driver's license. As the defendant's wife was pulling out of the plant, Taylor turned into the driveway and parked with his truck still partly in the highway. Both the defendant and his wife stated to the police that Taylor got out of his truck and started walking toward them saying, "I'm going to kill you." The defendant then shot Taylor an unspecified number of times.

The head of the Mount Airy Rescue Squad was passing by the Coca-Cola plant when the shooting occurred. He pulled in to give aid, but Taylor died almost immediately after he arrived. All of the gunshot wounds were found to be in Taylor's back.

The trial court found as mitigating factors that the defendant had no criminal record, that the defendant voluntarily acknowledged his wrongdoing prior to his arrest, and that the defendant had been a person of good character in his community. The trial court found as the only nonstatutory aggravating factor that the defendant acted with premeditation and deliberation in killing Taylor. Upon finding that the aggravating factor outweighed the mitigating factors, the court imposed the statutory maximum of twenty years imprisonment. The court also ordered that, as a condition of work release or parole, the defendant would have to pay one-third of

STATE v. EASTER

[101 N.C. App. 36 (1990)]

his income to the clerk of court to be disbursed to the minor children of the deceased.

---

The issues are: (I) whether the trial court erred in finding as an aggravating factor that the defendant acted with premeditation and deliberation because (A) the factor is not supported by the evidence, and (B) because the factor is not reasonably related to the purposes of sentencing in a voluntary manslaughter case; (II) whether the trial court erred in not finding as mitigating factors that the defendant acted under threat, and that he acted under strong provocation or that the relationship between the defendant and the victim was otherwise extenuating; and (III) whether the court's order that the defendant pay one-third of his income to the clerk of court for disbursement to the minor children of the deceased was beyond the power of the trial court.

[1] We first note that the State argues in its brief that this appeal should be dismissed because the record does not contain the court reporter's certification that copies of the completed transcript have been delivered to the parties as required by N.C.R. App. P. 7(b)(2) (1990). Since the State's contention is raised for the first time in its brief, and not by filing a motion for dismissal, we do not address this argument. N.C.R. App. P. 25, 37 (1990). *See also Morris v. Morris*, 92 N.C. App. 359, 374 S.E.2d 441 (1988) (declining to address a motion to dismiss raised in the defendant's brief where the record contained no motion to dismiss filed in accordance with Rule 37).

I

[2] The defendant first argues that the trial court erred by finding as a nonstatutory aggravating factor that the defendant acted with premeditation and deliberation.

A

The defendant contends that there is no evidence to support a finding that he acted with premeditation and deliberation. We disagree.

The State bears the burden of proving by a preponderance of the evidence the existence of an aggravating factor. *State v. Thompson*, 318 N.C. 395, 348 S.E.2d 798 (1986). The terms "premeditation" and "deliberation" have been explained as follows:

STATE v. EASTER

[101 N.C. App. 36 (1990)]

Premeditation has been defined by this Court as thought beforehand for some length of time, however short. No particular length of time is required; it is sufficient if the process of premeditation occurred at any point prior to the killing. [Citations omitted.] An unlawful killing is committed with deliberation if it is done in a "cool state of blood," without legal provocation, and in furtherance of a "fixed design to gratify a feeling of revenge, or to accomplish some unlawful purpose." [Citations omitted.]

*State v. Williamson*, 72 N.C. App. 657, 658, 326 S.E.2d 37, 38 (1985) (quoting *State v. Corn*, 303 N.C. 293, 297, 278 S.E.2d 221, 223 (1981) ).

Premeditation and deliberation must usually be established by circumstantial evidence. *State v. Lloyd*, 89 N.C. App. 630, 636, 366 S.E.2d 912, 916, *disc. rev. denied*, 322 N.C. 483, 370 S.E.2d 231 (1988). The circumstances which may tend to establish premeditation and deliberation include:

(1) want of provocation on the part of the deceased; (2) the conduct and statements of the defendant before and after the killing; (3) threats and declarations of the defendant before and during the course of the occurrence giving rise to the death of the deceased; (4) ill-will or previous difficulty between the parties; (5) the dealing of lethal blows after the deceased has been felled and rendered helpless; and (6) evidence that the killing was done in a brutal manner.

*Id.* (quoting *State v. Gladden*, 315 N.C. 398, 430-31, 340 S.E.2d 673, 693, *cert. denied*, 479 U.S. 871, 93 L.Ed.2d 166 (1986) ).

In addition to the circumstances above, it has also been held that the nature and number of the victim's wounds may also support an inference of premeditation and deliberation. *See State v. Carter*, 318 N.C. 487, 491, 349 S.E.2d 580, 582 (1986).

The record indicates that upon learning that his wife had dated Taylor, the defendant drove from Mount Airy to Lambsburg, Virginia in an effort to find Taylor. He carried with him on this trip a .45-caliber pistol. Taylor's wife told the defendant that Taylor was living in Mount Airy. Before driving back to Mount Airy, the defendant told Taylor's wife that he would "hit him one time for you too." The next day, still armed with the .45-caliber pistol, the defendant went to Bradley Hull's home to confront Taylor. When he found no one home, the defendant fired four shots into

Taylor's truck and two shots into the house. After leaving his child with his father-in-law, the defendant finally confronted Taylor. After a heated argument, the defendant told Taylor that he would be back that night to "get him." As the defendant was leaving, he tried to back over Taylor. In the final confrontation at the Coca-Cola plant, the defendant contends that Taylor first threatened to kill the defendant as he was walking toward the defendant and his wife. However, all the gunshot wounds to Taylor's body were in his back. While the record is not specific as to the number of gunshot wounds to Taylor's body, it does indicate that there was more than one wound.

This evidence is sufficient to support a finding by the trial court that the State established by a preponderance of the evidence that the defendant acted with premeditation and deliberation.

B

[3] The defendant next argues that premeditation and deliberation are improper factors to be considered under the circumstances of this case because (1) these factors are not "reasonably related to the purposes of sentencing," as required by N.C.G.S. § 15A-1340.4(a), and (2) deliberation and premeditation are inherent to the offense of voluntary manslaughter.

(1)

The relevant statute provides the following:

> The primary purposes of sentencing a person convicted of a crime are to impose a punishment commensurate with the injury the offense has caused, taking into account factors that may diminish or increase the offender's culpability; to protect the public by restraining offenders; to assist the offender toward rehabilitation and restoration to the community as a lawful citizen; and to provide a general deterrent to criminal behavior.

N.C.G.S. § 15A-1340.3 (1988).

Our Supreme Court has held that "when a defendant pleads guilty to murder in the second degree, a determination by the preponderance of the evidence in the sentencing phase that he premeditated and deliberated the killing is reasonably related to the purposes of sentencing[,]" and that "[s]uch aggravating factors may be considered in determining an appropriate sentence for the

killer." *State v. Melton*, 307 N.C. 370, 376, 298 S.E.2d 673, 678 (1983). We are unable to discern, and indeed the defendant does not argue, any distinction which would make premeditation and deliberation reasonably related to the purposes of sentencing where the defendant pleads guilty to murder, but not where he pleads guilty to voluntary manslaughter. Accordingly, we hold that premeditation and deliberation are appropriate nonstatutory aggravating factors where the defendant pleads guilty of voluntary manslaughter.

(2)

We also reject the defendant's argument that premeditation and deliberation are inherent to the offense of voluntary manslaughter and cannot, therefore, be considered as aggravating factors upon a plea of guilty to voluntary manslaughter. *See* N.C.G.S. § 15A-1340.4(a)(1) (evidence necessary to prove an element of the offense may not be used to prove any factor in aggravation). Murder in the first degree is the intentional and unlawful killing of a human being with malice, premeditation, and deliberation. *State v. Fleming*, 296 N.C. 559, 251 S.E.2d 430 (1979). Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation. *State v. Snyder*, 311 N.C. 391, 317 S.E.2d 394 (1984). Voluntary manslaughter is the unlawful killing of a human being without malice, premeditation, or deliberation. *State v. Robbins*, 309 N.C. 771, 309 S.E.2d 188 (1983). Thus, premeditation and deliberation are inherent to first-degree murder, but not to second-degree murder or voluntary manslaughter.

Accordingly, the trial court did not err by finding premeditation and deliberation as aggravating factors.

II

[4] The defendant next argues that the trial court erred by failing to find as statutory mitigating factors, under N.C.G.S. § 15A-1340.4(a)(2), that the offense was committed under threat, and that it was committed under strong provocation or that the relationship between the defendant and the victim was otherwise extenuating.

Where the evidence in support of a mitigating factor is uncontradicted and manifestly credible, it is error for the trial court to fail to find the mitigating factor. *State v. Jones*, 309 N.C. 214, 306 S.E.2d 451 (1983). The defendant has the burden of establishing

a mitigating factor by a preponderance of the evidence. *State v. Hinnant*, 65 N.C. App. 130, 308 S.E.2d 732 (1983), *cert. denied*, 310 N.C. 310, 312 S.E.2d 653 (1984).

The defendant contends that there was uncontroverted evidence that the victim blocked the defendant's vehicle, approached the defendant with his gun drawn, and uttered a threat to kill. The defendant further argues that these acts constituted both a threat and strong provocation as contemplated by the statute.

The evidence relied upon by the defendant came from statements made by the defendant and his wife to the investigating officer shortly after the shooting. However, when the defendant's wife told the officer that the victim had pulled into the Coca-Cola plant and blocked them in, the officer told her that their vehicle was not blocked when he arrived. The defendant's wife then stated that she had subsequently moved the car. The head of the Mount Airy Rescue Squad was immediately on the scene, however, and he told the investigating officer that the vehicles were still in the same location they were in when he arrived. Furthermore, the defendant and his wife stated that the victim approached them with a gun in his hand and threatened to kill. However, all the gunshot wounds to the victim's body were in his back. We find from the record that the evidence was conflicting such that the trial court could find that the statements made by the defendant and his wife were contradicted and lacked credibility.

[5] The defendant also contends that there was an extenuating relationship between the defendant and the victim because the victim's behavior tends to shift part of the moral fault for the crime to the victim. *See State v. Martin*, 68 N.C. App. 272, 314 S.E.2d 805 (1984) (the legislature apparently had in mind circumstances that morally shift the fault for a crime). The basis for this argument is the alleged adulterous relationship between the victim and the defendant's wife. However, the record does not support this contention. The record states only that the defendant's wife dated the victim an unspecified number of times. There is a conflict as to whether the dating occurred one year or three years before the shooting, but there is no inference in the record that the date or dates escalated into the "adulterous relationship" argued by the defendant. Furthermore, "[t]here is nothing on the face of the statute to indicate that our legislature meant to provide shorter prison terms for defendants motivated by jealousy or rage."

.

*State v. Puckett*, 66 N.C. App. 600, 606, 312 S.E.2d 207, 211 (1984). *See also State v. Monroe*, 70 N.C. App. 462, 320 S.E.2d 14 (1984).

Therefore, the trial court did not err by failing to find these mitigating factors.

## III

**[6]** The defendant's final argument is that the trial court erred by including in its sentence an order that the defendant pay one-third of his income to the clerk of court for disbursement to the minor children of the victim as a condition of work release. The defendant contends that restitution may only be recommended as a condition of work release, and that it cannot be unconditionally ordered. He further contends that the order was not supported by the evidence. We agree on both bases.

The statute pertaining to restitution paid by prisoners with work release is N.C.G.S. § 148-33.2. Prior to a 1985 amendment, the statute provided that the court shall consider whether "restitution or reparation shall be *ordered or recommended* . . . as a condition of attaining work-release privileges." N.C.G.S. § 148-33.2(c) (1978) (emphasis added). In part, the amended statute reads as follows:

> When an active sentence is imposed, the court shall consider whether, as a rehabilitative measure, it should *recommend* to the Secretary of Correction that restitution or reparation be made by the defendant out of any earnings gained by the defendant if he is granted work-release privileges and out of other resources of the defendant. . . . If the court determines that restitution or reparation should not be recommended, it shall so indicate on the commitment. If, however, the court determines that restitution or reparation should be recommended, the court shall make its recommendation a part of the order committing the defendant to custody. The *recommendation* shall be in accordance with the applicable provisions of G.S. 15A-1343(d).

N.C.G.S. § 148-33.2(c) (1987) (emphasis added).

While N.C.G.S. § 15A-1343, which pertains to conditions of probation, speaks in terms of an "order" for restitution or reparation, the amended N.C.G.S. § 148-33.2(c) makes clear that restitution or reparation may only be recommended as a condition of work release, and if such recommendation is made it is to comply with

the *applicable* provisions of N.C.G.S. § 15A-1343(d). Thus, the language in that section referring to an "order" for restitution or reparation is made inapplicable by the language of N.C.G.S. § 148-33.2(c). Accordingly, the trial court is without the authority to "order" restitution as a condition of work release.

One part of N.C.G.S. § 15A-1343 which we do find applicable is the provision that "[t]he amount [of restitution] must be limited to that supported by the record. . . ." N.C.G.S. § 15A-1343(d) (1988). Restitution is intended to be compensatory, not punitive. *State v. Burkhead*, 85 N.C. App. 535, 355 S.E.2d 175 (1987). The record before us reveals only that the victim was separated from his wife, and that they had two children who lived with their mother at the time the victim died. This evidence does not support restitution in the amount of one-third of whatever the defendant's income may be for an undetermined period of time.

In summary, with the exception of the order requiring the defendant to pay one-third of his income to the clerk, which is vacated, the trial court is affirmed. We remand for a new hearing and judgment on the question of any recommended conditions of work release.

Affirmed in part, vacated in part and remanded.

Judges ORR and DUNCAN concur.

Judge DUNCAN concurred in this opinion prior to 30 November 1990.