STATE OF NORTH CAROLINA v. MICHAEL EUGENE FREEMAN

No. COA03-878

(Filed 1 June 2004)

**1. Appeal and Error— preservation of issues—sufficiency of evidence—failure to move to dismiss**

Defendant's failure to move to dismiss a charge of cutting another's timber at the close of all the evidence barred defendant from raising the issue on appeal. Moreover, plain error only applies to jury instructions and evidentiary matters in criminal cases.

**2. Probation and Parole— restitution—cutting timber—values from forestry report and sales of similar property—averaged**

The trial court did not err when determining restitution as a condition of probation for cutting another's timber by averaging the values from a forestry report and from the owner's sale of similar property. The values were both supported by evidence and authorized under N.C.G.S. § 15A-1340.35.

**3. Appeal and Error— preservation of issues—failure to assign error—no objection at trial**

Defendant's failure to assign error or object at trial waived the question of whether the court erred by not considering his ability to pay restitution.

Appeal by defendant from judgment entered 13 February 2003 by Judge Gary L. Locklear in Cumberland County Superior Court. Heard in the Court of Appeals 21 April 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Donna B. Wojcik, for the State.*

*Mark A. Key and Penny K. Bell, for defendant-appellant.*

TYSON, Judge.

Michael Eugene Freeman ("defendant") appeals from judgment entered after a jury found him to be guilty of misdemeanor cutting, injuring, or removing another's timber. Defendant was sentenced to imprisonment for 120 days. The trial court suspended this sentence and placed defendant on probation for sixty months. As part of the judgment, defendant was ordered to pay restitution in the amount of $12,837.00 to Billy Cain ("Cain"). We find no error at trial and affirm the judgment ordering restitution.

## I. Background

During November and December 1999, defendant was employed as a logger with Ross Logging Company, owned by Riley Ross ("Ross"). In November 1999, Ross contracted with Elvin Simmons ("Simmons") to cut and remove timber from his property. Ross hired Canal Wood Company to remove the timber, sell it, and pay Simmons the proceeds. Simmons was obligated to pay Ross Logging Company. The project was completed in late December 1999. Ross and Simmons testified that trees on adjoining properties were left when the Simmons's job was completed.

Steven Shaffer ("Shaffer") testified that his grandmother lived down the road from Simmons's and Cain's properties, although none of these individuals were personally acquainted. In late 1999 or early 2000, Shaffer observed several men, including defendant, and two trucks bearing the logo "All American Timber" near his grandmother's property. Shaffer engaged in a conversation with defendant, who informed him that Simmons had permitted the men to cut trees. The men were there to identify, or "tag," the trees to be cut. Shaffer requested defendant to remove some trees from his grandmother's property. Defendant gave Shaffer a business card with his name and phone number written on the back. The front of the card read, "All American Timber Company," which matched the name on the trucks.

Cain owns property adjoining Simmons's land. Prior to 1999, ninety-five percent (95%) of his land was covered by large, longleaf, southern yellow pine trees, with trunks up to twenty-four inches in diameter. In late 1999 or early 2000, Cain visited his property and observed that timber from approximately five acres of his land had been cut and removed. Cain spoke with neighbors, including Shaffer's grandmother, and learned that trees Shaffer saw being tagged were actually located on Cain's property. He called the Fayetteville Police Department and reported his trees had been cut.

Defendant contacted Cain approximately five times by phone and two times in person after charges were filed against him. In the first telephone conversation with Cain, defendant admitted that he cut the timber, but contended that he acted at the direction of the company and was not personally responsible. A few weeks later, defendant called Cain and informed him that a "Mr. Riley" had cut the timber. Six weeks later, defendant met with Cain. Cain provided defendant with an estimate of the stolen timber's value. Cain asked how much money defendant received from the timber. Defendant admitting cutting the timber and receiving payment for it, but could not remember the amount of money he had received. Cain testified that defendant's story changed from working *for* Mr. Riley to working *with* Mr. Riley.

Defendant asked Cain what amount of money he wanted. Cain replied that he would be satisfied if defendant paid for the value of the timber and reimburse him for the cost of obtaining the estimate. Defendant stated he would see what he could do about getting the money and left. Defendant later visited Cain's office and told Cain that he would pay for the timber but was trying to raise money. A few

STATE v. FREEMAN

[164 N.C. App. 673 (2004)]

days after this visit, defendant called Cain again and stated that Cain had damaged his name and would sue Cain if he did not drop the charges. Cain told defendant never to contact him again and had no further contact with defendant until trial.

The jury found defendant to be guilty of cutting, injuring, or removing Cain's timber and the trial court proceeded to sentencing and restitution. The State offered two methods to determine the issue of damages. The first method involved Cain's testimony that he had sold a similar tract of land in 2002 that was slightly larger, measuring approximately 8.4 acres, and included 6.2 acres of cuttable timber. The second method was based on Cain's testimony that he hired a forestry agent who documented and estimated the value of the timber cut from Cain's land.

The trial court averaged the results of the two methods and ordered defendant to pay restitution in the amount of $12,337.00, plus the $500.00 Cain paid for the forestry report, for a total of $12,837.00. The trial court suspended defendant's sentence and placed defendant on probation for five years on the condition that he pay the restitution and costs of the action. Defendant appeals.

## II. Issues

The issues presented are whether the trial court erred in: (1) failing to dismiss the case and submitting the case to the jury; (2) failing to consider the factors set forth in N.C. Gen. Stat. § 15A-1340.35 by not measuring damages at the time and place of the alleged loss; and (3) speculating as to the amount of restitution due and whether defendant had the ability to pay.

## III. Motion to Dismiss

[1]. Defendant contends the State presented insufficient evidence to submit the charge of cutting, injuring, or removing another's timber to the jury. We disagree and dismiss this assignment of error.

The failure of a defendant to move to dismiss at the close of all the evidence bars him from raising this issue on appeal. *State v. Richardson*, 341 N.C. 658, 676-77, 462 S.E.2d 492, 504 (1995). Rule 10 of the North Carolina Rules of Appellate Procedure provides that "a defendant in a criminal case may not assign as error the insufficiency of the evidence to prove the crime charged unless he moves to dismiss the action . . . ." N.C.R. App. P. 10(b)(3) (2004). Further, "if a defendant fails to move to dismiss the action . . . at the close of all the

evidence, he may not challenge on appeal the sufficiency of the evidence to prove the crime charged." *Id.*

Here, defendant failed to renew his motion to dismiss and waived appellate review of this issue. Defendant argues we should apply plain error review. Plain error, however, only applies to jury instructions and evidentiary matters in criminal cases. *State v. Atkins,* 349 N.C. 62, 81, 505 S.E.2d 97, 109 (1998), *cert. denied,* 526 U.S. 1147, 143 L. Ed. 2d 1036 (1999). While this is a criminal case, defendant's failure to renew his motion to dismiss does not trigger a plain error analysis. *See Richardson,* 341 N.C. at 676-77, 462 S.E.2d at 504 (Our Supreme Court declined to apply plain error when defendant failed to renew motion to dismiss and preserve issue for review pursuant to N.C.R. App. P. 10(b)(3)). This assignment of error is dismissed.

### IV. N.C. Gen. Stat. § 15A-1340.35

[2] Defendant contends the trial court failed to consider the requirements of N.C. Gen. Stat. § 15A-1340.35 in ordering restitution. We disagree.

The trial court may order restitution as a condition of probation. *State v. Canady,* 153 N.C. App. 455, 460, 570 S.E.2d 262, 266 (2002); N.C. Gen. Stat. § 15A-1343(d) (2003). "Restitution, imposed as a condition of probation, is not a legal obligation equivalent to a civil judgment, but rather an option which may be voluntarily exercised by the defendant for the purpose of avoiding the serving of an active sentence." *State v. Smith,* 99 N.C. App. 184, 186-87, 392 S.E.2d 625, 626 (1990), *cert. denied,* 483 S.E.2d 189 (1997) (citing *Shew v. Southern Fire & Casualty Co.,* 307 N.C. 438, 298 S.E.2d 380 (1983)).

The amount of restitution ordered by the court must be supported by the evidence. *State v. Hunt,* 80 N.C. App. 190, 195, 341 S.E.2d 350, 354 (1986) (citing *State v. Daye,* 78 N.C. App. 753, 338 S.E.2d 557 (1986)); *see also Canady,* 153 N.C. App. at 461, 570 S.E.2d at 266. The trial court is not required to make specific findings of fact. *Hunt,* 80 N.C. App. at 195, 341 S.E.2d at 354 (citing *State v. Hunter,* 315 N.C. 371, 338 S.E.2d 99 (1986)). If there is "some evidence as to the appropriate amount of restitution, the recommendation will not be overruled on appeal." *Hunt,* 80 N.C. App. at 195, 341 S.E.2d at 354.

"When restitution or reparation is a condition imposed, the court shall take into consideration the factors set out in G.S. 15A-1340.35 and G.S. 15A-1340.36." N.C. Gen. Stat. § 15A-1343(d) (2003). To deter-

mine the amount of restitution where the offense results in damage, loss, or destruction of a victim's property, and the return of that property is impossible, impractical, or inadequate, the trial court shall consider: "(1) The value of the property on the date of the damage, loss, or destruction; or (2) The value of the property on the date of sentencing, less the value of any part of the property that is returned." N.C. Gen. Stat. § 15A-1340.35(a)(2); N.C. Gen. Stat. § 15A-1340.35(b)(1)-(2) (2003).

Here, two methods were offered to determine the issue of damages at trial and during the sentencing hearing. The tract at bar was five acres, with approximately 4.6 acres of merchantable timber. Cain testified at trial that he had sold a similar, although slightly larger, tract of land with approximately 6.2 acres of cuttable timber in 2002. This tract contained large, longleaf, southern yellow pine trees that were "substantially similar" to the timber removed from the tract at bar. During the sentencing hearing, Cain testified he received $15,000.00 from the sale. Using this evidence, the trial court calculated an amount of $11,129.00 for the 4.6 acres of timber cut from Cain's property.

The State also submitted at the sentencing hearing a report taken by a JMG Forestry agent ("forestry report"), which Cain had obtained in April 2000 as a result of discussions with defendant. The forestry report estimated the tract had a market value of approximately $13,545.00.

Defendant was sentenced on 12 February 2003. The trial court valued the timber based on the forestry report estimating the value of the timber near the "date of the damage, loss, or destruction." N.C. Gen. Stat. § 15A-1340.35 (b)(1). The trial court also considered Cain's sale of similar property in 2002, near the date of sentencing. N.C. Gen. Stat. § 15A-1340.35 (b)(2). None of the timber was recovered, and the restitution does not credit any "value of any part of the property that is returned." *Id.*

The trial court averaged the value it calculated from Cain's testimony and the value set forth in the forestry report. The trial court ordered restitution in the amount of $12,837.00, including $500.00 Cain had paid to obtain the forestry report. The trial court did not err in averaging the two values, which were both supported by evidence and authorized under N.C. Gen. Stat. § 15A-1340.35, and ordering the averaged amount as restitution. This assignment of error is overruled.

## V. Ability to Pay Restitution

**[3]** Defendant contends the trial court erred in failing to consider his ability to pay the amount of restitution due under the order. We disagree and dismiss this assignment of error.

"[T]he scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal . . . ." N.C.R. App. P. 10(a) (2004). Further, "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection, or motion . . . ." N.C.R. App. P. 10(b) (2004).

Here, defendant did not identify within his assignments of error contained in the record that the trial court failed to consider his ability to pay the ordered restitution. Defendant did not object to the trial court's ruling by arguing that defendant could not pay the $214.00 monthly payment over five years. Defendant failed to object when the trial court conducted an inquiry regarding whether defendant intended to pay the ordered amount:

THE COURT:  Look me in the eyes, Mr. Freeman. Do you plan to pay this money back at about—its going to be just a little better than $200.00 a month. Do you plan to pay it back?

THE DEFENDANT: If I have to.

THE COURT:  You have to.

THE DEFENDANT: Okay.

. . . .

THE COURT:  The other alternative . . . is going to prison.

THE DEFENDANT: Right. That's right.

Defendant has waived appellate review of this argument. *See* N.C.R. App. P. 10 (2004). Additionally, defendant testified at trial that he worked all his life as a logger, had owned his own logging business with his father, and was currently employed. Defendant presents no argument on appeal of his inability to pay the ordered amount. This assignment of error is dismissed.

## VI. Conclusion

Defendant failed to renew his motion to dismiss at the close of all evidence and to assign error to the trial court's ruling that he had the

ability to pay the restitution amount. We dismiss these arguments pursuant to the North Carolina Rules of Appellate Procedure. *See* N.C.R. App. P. 10. In ordering restitution, the trial court properly considered the requirements set forth in N.C. Gen. Stat. § 15A-1340.35. We hold that defendant received a trial free from error. The trial court's order setting the restitution amount is affirmed.

No Error.

Judges McGEE and TIMMONS-GOODSON concur.