STATE OF NORTH CAROLINA v. ROGER GENE MOORE, Defendant

No. COA10-764

(Filed 15 February 2011)

**1. False Pretense— renting out another's house—evidence sufficient**

There was sufficient evidence that defendant obtained property by false pretenses by purporting to rent a house that he did not own. Although defendant argued that the two renters were not deceived because defendant told them not to let anyone know that they were staying at the house, evidence not favorable to the State is not considered when ruling on a motion to dismiss.

**2. Appeal and Error— preservation of issues—restitution—preserved without objection**

An award of restitution is deemed preserved for appellate review even without a specific objection.

**3. Sentencing— restitution—renting out another's property—restitution to owner**

There was no error in an award of restitution to a property owner after defendant was convicted of obtaining property by false pretenses by renting the property as if he owned it. Although defendant's fraudulent representations were made against the renter, the homeowner was harmed as a direct and proximate result.

**4. Sentencing— restitution—amount—evidence not sufficient**

The trial court erred in the amount of restitution ordered where the amount was supported only by an unverified worksheet. The trial court's award amounted to punishment instead of compensation.

**5. Sentencing— form not marked—clerical error—presumptive sentence**

The trial court's failure to mark a box on the judgment and commitment form was mere clerical error where defendant's sentence fell within the presumptive range.

Judge BRYANT concurring in part and dissenting in part.

Appeal by defendant from judgment entered 4 February 2010 by Judge Laura Bridges in Superior Court, Buncombe County. Heard in the Court of Appeals 30 November 2010.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Terence D. Friedman, for the State.*

*Carol Ann Bauer, for defendant-appellant.*

STROUD, Judge.

Roger Gene Moore ("defendant") appeals from the trial court's order sentencing him for conviction for obtaining property by false pretense and ordering him to pay court costs, restitution, and attorney's fees. For the following reasons, we vacate the trial court's order for restitution and find no error in defendant's trial.

## I. Background

On 5 October 2009, defendant was indicted for obtaining property by false pretense for purporting to rent a house to a tenant when he did not actually own the property. Defendant was tried on this charge at the 2 February 2010 Criminal Session of Superior Court, Buncombe County. The evidence presented at trial tended to show the following. Defendant is the former brother-in-law of Tanya McCosker. Ms. McCosker's husband Clayton Moore (defendant's brother) owned a piece of real property in Woodfin, North Carolina, consisting of a small house and lot ("the house"). Clayton Moore died in 2003 without a will. Subsequently, Ms. McCosker and other members of the Moore family deeded their ownership interests in the house to her and Clayton's seventeen-year-old son, Dale Moore on 21 August 2003. Ms. McCosker testified that significant improvements had been made to the interior of the house in 2003 and 2004, including new cabinets, carpet, and paneling, and that she had planned to rent the house to a tenant but had never done so. Defendant owned a piece of real property adjacent to the house. Because Ms. McCosker lived eight or nine miles from the house and it was "out of the way," she did not drive by the house on a regular basis.

In January 2009, she arrived at the house to find its front screen door and front windows broken. The interior of the house had been

STATE v. MOORE

[209 N.C. App. 551 (2011)]

damaged, as the cabinets had been taken down, the walls were "dented[,]" there was a hole in the floor, the carpet was stained, there was "trash everywhere," and sewage had backed up into the bathtub. Ms. McCosker called the police and reported a break-in. Ms. McCosker found and handed to the responding officer a piece of paper in the house showing that a registered sex offender named Michael Alan Wilson had listed the house as his address. The responding officer also found paper in the house bearing the name Frederick Phythian[1]. The officer also testified that he had been called to the house in 2005 or 2006 and had not witnessed any breakage to the house nor any odors. A police detective located Mr. Wilson at a homeless shelter and interviewed him.

Mr. Wilson testified that defendant allowed him and Mr. Phythian to stay in the house briefly without paying rent, but they had remained there for less than one week. Later, in August 2007, defendant allowed them to rent the house for $300 per month. Mr. Wilson and Mr. Phythian rented the house until December 2007 when they moved out again. They returned to the house in April 2008 and stayed for about six weeks before moving out permanently. Mr. Wilson described the house as lacking power, running water, heat, and a sewage system. Mr. Wilson testified that Mr. Phythian paid the rent from a Social Security disability check and that he was not aware of any receipts issued by defendant to Mr. Phythian. Mr. Wilson stated that Mr. Phythian had made a total of five rental payments of $300 each, one each month September through December 2007 and another in April 2008. Mr. Phythian was in another room at the courthouse but did not testify due to hygiene problems resulting from a lack of bathing. At the close of the State's evidence, defendant moved to dismiss, and the trial court denied defendant's motion.

Defendant's other brother, Rick Moore, testified that he owned property near the house and he passed by the house several times a week. Mr. Moore had never realized anyone was renting it, although he had never gone inside to see whether it was occupied. Mr. Moore testified that he had seen Mr. Wilson on his own property before and had to ask him to leave. Defendant testified that he had never given Mr. Wilson and Mr. Phythian permission to stay in the house nor accepted any money from them. Instead, he stated that he had asked

---

1. The indictment and the handwritten statement Wilson gave to police in January 2009 use the spelling "Phythian." However, the spelling "Prythian" is used in the trial transcript.

the two men to leave the house five or six times. Defendant moved to dismiss at the close of all evidence and the trial court again denied the motion.

A jury found defendant guilty of obtaining property by false pretenses. The trial court sentenced defendant to a term of six to eight months in prison, suspended on condition of supervised probation. The trial court also ordered defendant to pay $245.50 in court costs, $39,332.49 in restitution for the damage to the house, and $2,336.87 in attorney's fees. Defendant appeals.

## II. Defendant's motions to dismiss

[1] Defendant first argues the trial court erred in denying his motions to dismiss based on insufficiency of the evidence. We have stated that "[t]he denial of a motion to dismiss for insufficient evidence is a question of law, . . . which this Court reviews *de novo*[.]" *State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007) (citations omitted). Further,

> [w]hen ruling on a motion to dismiss for insufficient evidence, the trial court must consider the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor. Any contradictions or conflicts in the evidence are resolved in favor of the State, . . . and evidence unfavorable to the State is not considered. The trial court must decide only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.

*State v. Miller*, 363 N.C. 96, 98-99, 678 S.E.2d 592, 594 (2009) (quotation marks and citations omitted).

Obtaining property by false pretenses is defined as: "(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another." *State v. Cronin*, 299 N.C. 229, 242, 262 S.E.2d 277, 286 (1980); N.C. Gen. Stat. § 14-100 (2009). In his brief, defendant acknowledges that the State's evidence showed defendant received money for rental of the house from Mr. Phythian and defendant did not own the house or have the right to rent it on the owner's behalf. This evidence fulfills each element of the offense: defendant falsely and intentionally represented to Mr. Wilson and Mr. Phythian that the

house was his to let, and this representation did deceive the two men who in turn paid rent to defendant. In his brief, defendant suggests that the evidence was insufficient because Mr. Wilson testified that defendant told him and Mr. Phythian not to let anyone know they were staying at the house. Defendant suggests this evidence establishes that the two men knew they should not be in the house and, therefore, were not deceived. However, as discussed above, evidence unfavorable to the State is not considered in ruling on a motion to dismiss and any contradictions in the evidence are resolved in the State's favor. *Miller*, 363 N.C. at 98, 678 S.E.2d at 594. Mr. Wilson testified that defendant offered to rent the house to the men and negotiated a rental price, which the men then paid to defendant. This evidence was sufficient for the trial court to allow the case to go to the jury. This argument is overruled.

## III. Restitution

[2] Defendant next contends that the trial court erred in ordering him to pay restitution. We note that even though defense counsel argued for a lesser amount of restitution, defense counsel did not make a specific objection at trial following the trial court's entry of the award of restitution. However, even without defendant's specific objection, "the trial court's entry of an award of restitution . . . is deemed preserved for appellate review under N.C. Gen. Stat. § 15A-1446(d)(18)." *State v. Shelton*, 167 N.C. App. 225, 233, 605 S.E.2d 228, 233 (2004)[2].

[3] Defendant specifically contends that because the indictment for obtaining property by false pretense lists Frederick Phythian, the renter, and not Dale Moore, the actual homeowner, as the victim, the trial court improperly ordered defendant to pay restitution to the incorrect victim. Essentially, defendant argues that restitution could not be ordered for any person other than Frederick Phythian, since he was identified in the indictment. Though defendant does not fully develop this argument, we address it.

We first note that defendant is not challenging the indictment itself; he does not contend that the indictment identifies the wrong person to whom he was alleged to have made the false representations.

---

2. N.C. Gen. Stat. § 15A-1446(d)(18) (2009) states that "[e]rrors based upon any of the following grounds, which are asserted to have occurred, may be the subject of appellate review even though no objection, exception or motion has been made in the trial division . . . . (18) The sentence imposed was unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally imposed, or is otherwise invalid as a matter of law."

In fact, N.C. Gen. Stat. § 14-100 does not require an indictment for obtaining property by false pretenses to identify a specific victim. The statute provides in part

> that it shall be sufficient in any indictment for obtaining or attempting to obtain any such money, goods, property, services, chose in action, or other thing of value by false pretenses to allege that the party accused did the act with intent to defraud, *without alleging an intent to defraud any particular person,* and without alleging any ownership of the money, goods, property, services, chose in action or other thing of value; and upon the trial of any such indictment, *it shall not be necessary to prove either an intent to defraud any particular person or that the person to whom the false pretense was made was the person defrauded,* but it shall be sufficient to allege and prove that the party accused made the false pretense charged with an intent to defraud . . . .

N.C. Gen. Stat. § 14-100(a) (2009) (emphasis added). Defendant argues we should nevertheless consider the sufficiency of the indictment under N.C. Gen. Stat. § 15A-1340.34(a), which provides:

> When sentencing a defendant convicted of a criminal offense, the court shall determine whether the defendant shall be ordered to make restitution to any victim of the offense in question. For purposes of this Article, the term "victim" means a person directly and proximately harmed *as a result of the defendant's commission of the criminal offense.*

N.C. Gen. Stat. § 15A-1340.34(a) (2009). The statute provides that the trial court may order restitution to "any victim," defined as "a person directly and proximately harmed as a result of the defendant's commission of the criminal offense." *Id.*

Our Court has previously held that N.C. Gen. Stat. § 15-1340.34 must be read in conjunction with N.C. Gen. Stat. § 15A-1340.35, which addresses the evidentiary basis for the determination of the amount of restitution. *See State v. Wilson,* 158 N.C. App. 235, 240, 580 S.E.2d 386, 390 (2003) ("Reading the statutory provisions together, the more specific statute explains and provides context for the broad language employed in the section concerning restitution generally. The trial court's basis for awarding restitution is limited to quantifiable costs, income, and values of the kind set out in N.C. Gen. Stat. § 15A-1340.35.") N.C. Gen. Stat. § 15A-1340.35 (2009) provides, in pertinent part:

(a) In determining the amount of restitution, the court shall consider the following: . . . .

(2) In the case of an offense resulting in the damage, loss, or destruction of property of a victim of the offense:

> a. Return of the property to the owner of the property or someone designated by the owner; or

> b. If return of the property under sub-subdivision (2)a. of this subsection is impossible, impracticable, or inadequate:

>> 1. The value of the property on the date of the damage, loss, or destruction; or

>> 2. The value of the property on the date of sentencing, less the value of any part of the property that is returned . . . .

(b) The court may require that the victim or the victim's estate provide admissible evidence that documents the costs claimed by the victim or the victim's estate under this section. Any such documentation shall be shared with the defendant before the sentencing hearing.

In addition, defendant's restitution was ordered as a special condition of probation. Under N.C. Gen. Stat. § 15A-1343, restitution as a condition of probation is not based upon loss to a "victim" but to an "aggrieved party." The statute provides as follows:

As a condition of probation, a defendant may be required to make restitution or reparation to *an aggrieved party or parties* who shall be named by the court for the damage or loss caused by the defendant arising out of the offense or offenses committed by the defendant. When restitution or reparation is a condition imposed, the court shall take into consideration the factors set out in G.S. 15A-1340.35 and G.S. 15A-1340.36.

N.C. Gen. Stat. § 15A-1343(d) (2009) (emphasis added).

Defendant cites no authority, and we find none, which requires that a "victim" of any crime, and particularly of obtaining property by false pretenses, be identified specifically in the indictment before that victim may receive restitution. In fact, as noted above, the indictment need not specifically identify any victim under N.C. Gen. Stat. § 14-100. The statutes which govern both the crime of obtaining property by false pretenses and the determination of restitution make it clear that

a crime may have more "victims" or "aggrieved parties" than those who might be specifically identified in the indictment. However, in order to give the defendant adequate notice of the restitution sought, N.C. Gen. Stat. § 15A-1340.35(b) provides that, "The court may require that the victim or the victim's estate provide admissible evidence that documents the costs claimed by the victim or the victim's estate under this section. Any such documentation shall be shared with the defendant before the sentencing hearing."

Thus, restitution is not limited to the particular victim named in the indictment. In this case, the homeowner was a victim as defined by N.C. Gen. Stat. § 15A-1340.34. Though defendant's criminal actions of fraudulent representations were committed against Frederick Phythian, the renter, the homeowner was harmed as a direct and proximate result of defendant's actions. *See id.* Defendant's rental of the home without authorization from the true homeowner resulted in damage to the home. Accordingly, defendant's argument is overruled.

[4] Defendant argues next that the trial court erred in ordering restitution in the amount of $39,332.49. The only evidence presented as to the amount of damages to the house was Ms. McCosker's testimony that a "repair person" had estimated that repairs to the house would cost "[t]hirty-something thousand dollars." Ms. McCosker also testified that she had "submitted to the district attorney's office an estimate for repairs[.]" The State introduced a restitution worksheet listing damages in the very specific amount of $39,332.49, and the trial court ordered this same amount as restitution. However, there is no "estimate for repairs" in the record on appeal.

The law is clear that where the defendant has not stipulated to the amount of restitution, the restitution worksheet alone is not sufficient to support an award of restitution. *See State v. Buchanan,* 108 N.C. App. 338, 341, 423 S.E.2d 819, 821 (1992) ("In the absence of an agreement or stipulation between defendant and the State, evidence must be presented in support of an award of restitution. Further, it is elementary that a trial court's award of restitution must be supported by competent evidence in the record. N.C.G.S. § 15A-1343(d); *State v. Easter,* 101 N.C. App. 36, 398 S.E.2d 619 (1990)."). Some cases, such as *State v. Davis,* 167 N.C. App. 770, 607 S.E.2d 5 (2005), uphold orders for restitution in an amount *less* than specific amounts which were supported by the evidence, but we find no cases which uphold an order of restitution in an amount *greater* than that which is supported by the evidence. Because the trial court

must consider factors other than the actual amount of damages claimed, such as the defendant's ability to pay, the trial court might properly order *less* than the full amount supported by the evidence. N.C. Gen. Stat. § 15A-1340.36(a) (2009) states that,

> In determining the amount of restitution to be made, the court shall take into consideration the resources of the defendant including all real and personal property owned by the defendant and the income derived from the property, the defendant's ability to earn, the defendant's obligation to support dependents, and any other matters that pertain to the defendant's ability to make restitution, but the court is not required to make findings of fact or conclusions of law on these matters. The amount of restitution must be limited to that supported by the record, and the court may order partial restitution when it appears that the damage or loss caused by the offense is greater than that which the defendant is able to pay. If the court orders partial restitution, the court shall state on the record the reasons for such an order.

Ordering restitution in an amount *greater* than the amount supported by the evidence violates the requirement of N.C. Gen. Stat. § 15A-1340.36(a) that "the amount of restitution must be *limited to* that supported by the record . . . ." *See id.* (Emphasis added.)

In *State v. Dallas*, —— N.C. App. ——, 695 S.E.2d 474 (2010), this Court vacated a restitution order because the amount was greater than could be supported by the evidence adduced at trial. The only evidence at trial was that the two vans stolen by the defendant were "worth $1,200.00 to $1,400.00[,]" but the trial court ordered restitution of $8,277.00, which was based "on the unverified Restitution Worksheet submitted by the State." *Id.* at ——, 695 S.E.2d at 479. Because the restitution order was not "supported by evidence adduced at trial or at sentencing," and "[t]he unsworn statement of the prosecutor is insufficient to support the amount of restitution ordered[,]" the restitution order was vacated. *Id.* (quotation marks omitted).

In *State v. Daye*, 78 N.C. App. 753, 338 S.E.2d 557, *disc. rev. allowed*, 316 N.C. 554, 344 S.E.2d 11, *aff'd per curiam*, 318 N.C. 502, 349 S.E.2d 576 (1986), this Court held that the amount of restitution cannot be based upon "guess or conjecture." *Id.* at 758, 338 S.E.2d at 561. The defendant in *Daye* had stipulated that the evidence as to restitution could be presented by unsworn statements of the district attorney, so this Court's ruling was not based upon the lack of sworn

testimony as to the amount of restitution. *Id.* at 757-58, 338 S.E.2d at 561. Instead, this Court's ruling was based upon the lack of specificity of the amount. *Id.* The State informed the court as follows regarding the amount of restitution:

> THE COURT: Mr. Hunt [district attorney], is there any matter of restitution that should be brought to the attention of the Court?
>
> MR. HUNT: Your Honor, the family indicated to me that they had a $5,000 life insurance policy on the decedent that was not sufficient to cover the medical—the funeral expenses. They've indicated to me that they were in excess of $5,000.
>
> THE COURT: Well, then, are you asking me to recommend that the defendant pay in excess of $5,000? That's not very specific, you know.
>
> MR. HUNT: $5,000; $5,000; Your Honor, that would be specific, and that amount would just absorb the amount of the debt.

*Id.* The trial court recommended restitution of $5,000.00, and this Court vacated the restitution award. *Id.* at 756, 338 S.E.2d at 560. We stated that "we believe there must be something more than a guess or conjecture as to an appropriate amount of restitution. Restitution is not intended to punish defendants, but to compensate victims. There is no predetermined fine or presumption of damages." *Id.* at 758, 338 S.E.2d at 561.

Here, the evidence at trial of "[t]hirty-something thousand dollars" was no more specific than the "guess or conjecture" of $5,000 in *Daye. See id.* at 758, 338 S.E.2d at 561. This case is also similar to *Dallas* in that although there was "some evidence" of the victim's damages, only the unverified restitution worksheet supported the actual amount ordered as restitution by the trial court. *See Dallas,* —— N.C. App. at ——, 695 S.E.2d at 479. The only mention in the record of a specific amount of $39,332.49 is on the restitution worksheet, but the worksheet is not evidence which can support the award of restitution. As noted in *Daye,* "Restitution is not intended to punish defendants, but to compensate victims." 78 N.C. App. at 758, 338 S.E.2d at 561. The trial court's award of restitution in these circumstances amounts to punishment instead of compensation based upon the evidence. Accordingly, we vacate the restitution order of $39,332.49.

IV. Mitigated, presumptive or aggravated range sentence

[5] Lastly, defendant argues that the trial court erred by failing to indicate whether his sentence was in the mitigated, presumptive or aggravated range. Specifically, defendant contends that the judgment and commitment form requires the trial court to indicate that either a sentence is in the presumptive range (Block 1), or that the trial court has made findings of aggravating and mitigating factors (Block 2). Here, the trial court failed to mark either block on the judgment and commitment form, and also did not make any findings regarding aggravating and mitigating factors. However, defendant does not contest his actual sentence of six to eight months for the Class H felony with a record level of I. Defendant's sentence falls in the presumptive range and, thus, no findings were required. *See State v. Chavis*, 141 N.C. App. 553, 568, 540 S.E.2d 404, 415 (2000); N.C. Gen. Stat. § 15A-1340.16(c) (2009). We conclude that the failure of the trial court to mark the appropriate box on the judgment and commitment form was mere clerical error. This argument is overruled.

NO ERROR IN PART AND VACATED IN PART.

Judge BEASLEY concurs.

Judge BRYANT concurs in part and dissents in part by separate opinion.

BRYANT, Judge, concurring in part and dissenting in part.

Where the trial court's recommendation as to restitution is supported by some evidence in the record and complies with our statutes and case law, the trial court's order of restitution must be affirmed.

The majority opinion states that the only evidence presented as to the amount of damages was Ms. McCosker's testimony regarding the amount as estimated by a repair person and her testimony that she had submitted an estimate of the repairs to the District Attorney's office. The majority also emphasizes that there is no estimate of repairs in the record. This appears to be the sole factual basis on which the majority relies to support its legal reasoning to vacate the order of restitution. Because I believe the majority opinion contradicts settled law on restitution and would open the door to many frivolous challenges to properly entered orders of restitution, I must respectfully dissent from the portion of the majority opinion

vacating the trial court's order of restitution. As to the remaining issues, I concur with the majority.

"As a condition of probation, a defendant may be required to make restitution or reparation to an aggrieved party or parties who shall be named by the court for the damage or loss caused by the defendant arising out of the offense or offenses committed by the defendant." N.C. Gen. Stat. § 15A-1343(d) (2009). "Restitution, imposed as a condition of probation, is not a legal obligation equivalent to a civil judgment, but rather an option which may be voluntarily exercised by the defendant for the purpose of avoiding the serving of an active sentence." *State v. Smith*, 99 N.C. App. 184, 186-87, 392 S.E.2d 625, 626 (1990), *cert. denied*, 483 S.E.2d 189 (1997) (citing *Shew v. Southern Fire & Casualty Co.*, 307 N.C. 438, 298 S.E.2d 380 (1983)). "The amount of restitution ordered by the court must be supported by the evidence. The trial court is not required to make specific findings of fact. If there is some evidence as to the appropriate amount of restitution, the recommendation will not be overruled on appeal." *State v. Freeman*, 164 N.C. App. 673, 677, 596 S.E.2d 319, 322 (2004) (internal citations and quotation marks omitted).

For example, in *State v. Hunt*, the defendant argued

that the trial court's recommendation of restitution as a condition of work release must be vacated because it is fatally ambiguous and unsupported by the evidence. The victim, Matt Stephens, testified that the hospital bill "is $10,364" and the doctor's bill "around $8,000." The court recommended that defendant be required to pay restitution from his work release earnings to "Matt Stephens or Hospital or Doctor to be Determined $18,364.00. . . ."

80 N.C. App. 190, 195, 341 S.E.2d 350, 354 (1986). Because there was "some evidence as to the appropriate amount of restitution[,]" we found no error. *Id.* Further, "[t]estimony from victims about the value of their [damages], even without receipts or documentation, has been held sufficient to support an order of restitution." *State v. Puckett*, No. COA09-1632, 2010 N.C. App. LEXIS 1088, at 13-14 (July 6, 2010) (unpublished) (citing *State v. Cousart*, 182 N.C. App. 150, 154-55, 641 S.E.2d 372, 375 (2007) and *Hunt*).

Here, Ms. McCosker testified that she had received a repair estimate in the amount of "thirty-something thousand dollars," and that she gave an estimate of that cost to the District Attorney's office.

Further, the transcript of the sentencing hearing in the record on appeal reflects the following:

> [Prosecutor]: Your Honor, I'd approach with the gold sheet which shows he is a Level I for felony sentencing. I'm also passing up a restitution worksheet drawn up our office in the amount of thirty-nine thousand three hundred thirty-two dollars and forty-nine cents. You've heard the evidence. They've testified. If you'd like to hear from them, I'd be happy, but the State would rest on the evidence we put forth.
>
> Court: All right.
>
> . . .
>
> Court: This sentence is suspended and the defendant placed on supervised probation for sixty months, and the sixty months is because of the large amount of restitution. He will pay thirty-nine thousand three hundred thirty-two dollars and forty-nine cents in restitution to Dale Moore.

While the transcript indicates that defendant's counsel urged the trial court not to impose such a high restitution amount, arguing that the amount should be reflected in a civil judgment, there was no specific objection to the worksheet. Thus, the amount of restitution awarded by the trial court was consistent with both Ms. McCosker's testimony and the worksheet presented by the State. The testimony and worksheet constitute "some evidence as to the appropriate amount of restitution," and, therefore, "the recommendation will not be overruled on appeal." *Freeman*, 164 N.C. App. at 677, 596 S.E.2d at 322 (*citing Hunt*, 80 N.C. at 195, 341 S.E.2d at 354). For these reasons, I would affirm the trial court's award of restitution.