STATE OF NORTH CAROLINA v. CHRISTOPHER ALLAN DALLAS, Defendant

No. COA09-644

(Filed 6 July 2010)

**1. Evidence— hearsay—exception—automobile valuation testimony—Kelley Blue Book—NADA pricing guide**

The trial court did not commit plain error in a multiple felony larceny of a motor vehicle and misdemeanor larceny case by admitting the automobile valuation testimony of three witnesses. The Kelley Blue Book and the NADA pricing guide fall within the N.C.G.S. § 8C-1, Rule 803(17) hearsay exception.

**2. Evidence— testimony—automobile valuation if junked and sold for parts—relevancy—larceny**

Although defendant contended that the trial court erred in a multiple felony larceny of a motor vehicle and misdemeanor larceny case by sustaining the State's objection to testimony by defendant's expert witness, a used car salesman, about the value of a Honda Accord if it had been junked and sold for parts, defendant failed to make an offer of proof at trial. Further, defendant failed to show how he was prejudiced when this value would not be relevant under the larceny statute in N.C.G.S. § 14-72.

**3. Damages and Remedies— restitution—improperly based on unverified worksheet**

The trial court's award of restitution in a larceny case was vacated. An unsworn statement of a prosecutor was insufficient to support the amount of restitution ordered, and the award was improperly based on the unverified restitution worksheet submitted by the State.

Appeal by defendant from judgments entered 23 July 2008 by Judge Thomas D. Haigwood in Perquimans County Superior Court. Heard in the Court of Appeals 30 November 2009.

*Attorney General Roy Cooper, by Special Deputy Attorney General B. LeAnn Martin, for the State.*

*Russell J. Hollers III for defendant-appellant.*

**STATE v. DALLAS**

[205 N.C. App. 216 (2010)]

GEER, Judge.

Defendant Christopher Allan Dallas appeals from his convictions of three counts of felony larceny of a motor vehicle, one count of misdemeanor larceny of a motor vehicle, and of being a habitual felon. Defendant primarily contends the trial court erred in admitting hearsay evidence as to the values of the stolen vehicles. We hold, however, that the challenged evidence either fell under the hearsay exception set out in Rule 803(17) of the Rules of Evidence or its admission was not prejudicial to defendant. Defendant also argues, and·we agree, that the trial court's award of restitution—based solely on the unverified restitution worksheet submitted by the State—is not supported by competent evidence in the record. Accordingly, we vacate the award of restitution.

<u>Facts</u>

At trial, the State's evidence tended to show the following facts. Dianne Welter, who lives at 100 Soundside Drive in Hertford, North Carolina, had parked on her property a 1987 white GMC van and a 1986 white Chevrolet C20 custom conversion van. She left her residence for a period of time beginning in August 2007. While she was away, she was contacted by defendant, who was interested in purchasing the vans. Ms. Welter told defendant repeatedly that she did not want to sell them.

When Ms. Welter returned to her residence in November 2007, the vans were missing from the property. A month earlier, in October 2007, Harry Clubb, a friend of defendant's who hauls cars and junk for a living, saw defendant broken down on the side of the road. Defendant was attempting to tow a white 1985 or 1986 Chevrolet van with his truck. Mr. Clubb pulled over, loaded the van onto his trailer, and hauled it to the metal crusher for defendant. The next morning, Mr. Clubb went with defendant to Ms. Welter's property where they used Mr. Clubb's trailer to pick up another white van. No one was home at the time, but defendant told Mr. Clubb that he had permission from Ms. Welter to take the van.

Roy Lewis, who lived in Ms. Welter's neighborhood, was riding his bike that morning when he came across two men working on a van parked on Ms. Welter's property. Mr. Lewis stopped to investigate, and the men told him they had talked to Ms. Welter and had been given permission to clean up and haul away the junk in her yard. At trial, Mr. Lewis testified that defendant looked familiar, but he could

not be absolutely sure defendant was one of the men he talked to that day.

On 8 November 2007, Mark MacLenan came home from work to discover his 1993 Honda Accord missing from his driveway. At around 8:00 a.m. that morning, Mr. Clubb had accompanied defendant to pick up a Honda Accord and take it to a metal crushing facility. Defendant told Mr. Clubb he had bought the Honda for $50.00. While driving through town that day, William Bostwick, Mr. MacLenan's neighbor, saw Mr. MacLenan's Accord being loaded onto a flatbed truck in front of defendant's house. Mr. Bostwick had noticed that the Accord was not parked in its usual spot on Mr. MacLenan's property earlier that day.

On 16 November 2007, Shirley Proctor discovered that her 1988 Ford Taurus was missing from her backyard. Sometime in August or September 2007, defendant had come to Ms. Proctor's house to ask if she would be interested in selling the Taurus. Ms. Proctor refused to sell the car to defendant. A few months later, on 15 November 2007, defendant came back and again asked to purchase the car. That time, Ms. Proctor told defendant she would sell it to him, but they never discussed a price, and she told him she would need to clean the car out beforehand. Defendant told Ms. Proctor he would be back to pick it up the next day. James Rushing, who was working with defendant on 15 November 2007, accompanied defendant to Ms. Proctor's home. Mr. Rushing sat in the car while defendant talked to Ms. Proctor on her front porch. He heard Ms. Proctor say twice that she did not want her car crushed. Defendant came back to the van and said he was going to buy the car.

The next morning, Ms. Proctor called defendant and left him a message saying she had decided not to sell the car. She then left her house to go shopping. Later that day, Mr. Rushing and defendant went over to Ms. Proctor's house to pick up the car. When Mr. Rushing asked defendant how he got the keys to the car, defendant told him that Ms. Proctor had given them to him. They loaded the car onto the truck and drove it to the metal crusher. When Ms. Proctor returned from her shopping trip and discovered her car missing, she called defendant who denied taking the car.

Defendant was subsequently charged with four counts of felony larceny of a motor vehicle and with being a habitual felon. At trial, Ms. Welter testified that the 1987 GMC van, which had over 150,000 miles on it, was worth $1,200.00 and the Chevrolet C20 van was worth

STATE v. DALLAS

[205 N.C. App. 216 (2010)]

between $1,200.00 to $1,400.00. In addition, Ms. Welter had paid $1,300.00 to put new tires on both vans. When asked how she arrived at the value of the new tires, Ms. Welter said she had contacted Wal-Mart, where she had purchased the tires, and had been given that number. Ms. Proctor testified that her Taurus had around 150,000 miles on it, but did not remember what she had told the investigating detectives about the value of the car. Mr. MacLenan testified that the Accord had approximately 130,000 miles on it and needed a couple hundred dollars' worth of work in order for it to be driven. Mr. MacLenan testified that he looked up the car's value in the Kelley Blue Book and that it was worth $1,500.00.

Chris Cooper, a used car salesman, testified that, in his opinion, the 1993 Honda Accord had a value of between $2,000.00 to $4,000.00; the 1987 GMC van had a value of between $1,200.00 to $3,000.00, depending on the add-ons to the vehicle; and the 1986 Chevrolet van had a value of $1,200.00 to $3,000.00, depending on the upgrades made to the vehicle. He based this testimony on the NADA pricing guide.

Defendant testified on his own behalf and admitted speaking to Ms. Welter about purchasing her vans, but denied stealing them. Defendant admitted taking Ms. Proctor's Taurus, but contended that she had given it to him and authorized him to take it off her lot. Defendant denied any involvement with the theft of Mr. MacLenan's Honda Accord. He testified that on 8 November 2007, Mr. Clubb had parked his trailer in defendant's yard and left for a few minutes, returning with a black car. Mr. Clubb stripped the car and loaded it onto his trailer and left. Defendant indicated that the black car he saw could have been Mr. MacLenan's Accord.

The trial court ultimately dismissed the felony larceny charge with respect to Ms. Proctor's Taurus and instead instructed the jury on the charge of misdemeanor larceny of the Taurus. The jury found defendant guilty of misdemeanor larceny of the Taurus and felony larceny of the Accord and the two vans. Defendant pled guilty to being a habitual felon. The trial court sentenced defendant to a presumptive-range term of 107 to 138 months imprisonment for one count of felony larceny of a motor vehicle, a consecutive presumptive-range term of 107 to 138 months imprisonment for the second count of felony larceny of a motor vehicle, and a concurrent presumptive-range term of 107 to 138 months imprisonment for the third count of felony larceny of a motor vehicle. The court sentenced defendant to a term of 120 days for the misdemeanor larceny charge with that sen-

tence to run consecutive to the second felony count sentence. The trial court also ordered restitution to Mr. MacLenan in the amount of $1,500.00 and to Ms. Welter in the amount of $8,277.00. Defendant timely·appealed to this Court.

I

**[1]** Defendant challenges three valuation opinions given by the State's witnesses: (1) Mr. MacLenan's testimony that, according to the Kelley Blue Book, his Accord was worth $1,500.00; (2) Mr. Cooper's testimony that the Accord was worth $2,000.00 to $4,000.00, the 1987 GMC van was worth $1,200.00 to $3,000.00, and the 1986 Chevrolet van was worth $1,200.00 to $3,000.00; and (3) Ms. Welter's testimony that she paid $1,300.00 for new tires on the vans. He claims that the testimony violated the hearsay rule and that Mr. MacLenan's and Ms. Welter's testimony also improperly invaded the province of the jury.

As defendant did not object to Mr. MacLenan's or Mr. Cooper's testimony, this Court reviews the admissibility of that testimony only for plain error. *See State v. Locklear*, 172 N.C. App. 249, 259, 616 S.E.2d 334, 341 (2005) (" 'Where, as here, a criminal defendant fails to object to the admission of certain evidence, the plain error analysis . . . is the applicable standard of review.' " (quoting *State v. Ridgeway*, 137 N.C. App. 144, 147, 526 S.E.2d 682, 685 (2000))). "If 'we are not persuaded that the jury probably would have reached a different result had the alleged error not occurred, we will not award defendant a new trial.' " *Id.* (quoting *Ridgeway*, 137 N.C. App. at 147, 526 S.E.2d at 685).

With respect to Mr. MacLenan and Mr. Cooper, the issue is whether their reliance on the values set out in the Kelley Blue Book and the NADA pricing guide amounted to inadmissible hearsay. Rule 803(17) of the Rules of Evidence provides that "[m]arket quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations" are not excluded by the hearsay rule. We hold that both the Kelley Blue Book and the NADA pricing guide fall within the Rule 803(17) hearsay exception.

In *In re McLean Trucking Co.*, 281 N.C. 375, 388, 189 S.E.2d 194, 203 (1972), *appeal dismissed and cert. denied*, 409 U.S. 1099, 34 L. Ed. 2d 681, 93 S. Ct. 909 (1973), the Supreme Court specifically held that the use of the Kelley Blue Book for determining the value of trucks comes within Rule 803(17). Thus, Mr. MacLenan's testimony

that he arrived at the value of $1,500.00 by looking at the Kelley Blue Book was admissible. *See also State v. Shaw*, 120 Wash. App. 847, 852, 86 P.3d 823, 826 (2004) (holding trial court did not err in admitting detective's testimony about stolen car's value obtained from Kelley Blue Book website because Blue Book values are admissible under Rule 803(17)).

Although North Carolina courts have not specifically addressed the admissibility of the NADA pricing guide, we believe it falls within the scope of Rule 803(17). Mr. Cooper testified that the NADA is "a national pricing guide" that he and others in the used car sales profession commonly use to price cars. *See Commander v. Smith*, 192 N.C. 159, 160, 134 S.E. 412, 413 (1926) ("[A]s a rule standard price lists and market reports which are shown to be in general circulation and relied on by the commercial world and by those engaged in the trade may be received as evidence of the market value.").

Other jurisdictions have held that NADA evidence is admissible under Rule 803(17). *See, e.g., Hess v. Riedel-Hess*, 153 Ohio App. 3d 337, 345, 794 N.E.2d 96, 103 (2003) (holding that because "[t]he NADA handbook is a standard tool for determining the value of a vehicle[,]" trial court did not err in admitting into evidence NADA appraisal guide from NADAguides.com in order to establish value of vehicle under Rule 803(17)); *State v. Batiste*, 764 So. 2d 1038, 1040 (La. App. 2000) ("In our view, the NADA Blue Book, containing the relative commercial values of used vehicles, constitutes the exact type of publication contemplated by La. Code Evid. art. 803(17)."), *cert. denied*, 794 So. 2d 778 (2001). In line with those jurisdictions, we also hold that NADA evidence was admissible in this case.

Ms. Welter's testimony regarding the value of her new tires—based on her phone call to Wal-Mart—presents a different issue. Even assuming, however, without deciding, that it was hearsay, defendant has failed to show prejudice. *See State v. Chavis*, 141 N.C. App. 553, 566, 540 S.E.2d 404, 414 (2000) ("The erroneous admission of evidence requires a new trial only when the error is prejudicial. To show prejudicial error, a defendant has the burden of showing that there was a reasonable possibility that a different result would have been reached at trial if such error had not occurred." (internal citations and quotation marks omitted)).

The testimony regarding the value of the tires on the two vans was offered to establish that the value of the stolen property was more than $1,000.00. *See* N.C. Gen. Stat. § 14-72(a) (2009) (providing

STATE v. DALLAS

[205 N.C. App. 216 (2010)]

that "[l]arceny of goods of the value of more than one thousand dollars ($1,000) is a Class H felony"). Both Mr. Cooper and Ms. Welter testified that the vans were each worth more than $1,000.00. In light of this evidence, even if the testimony regarding the tires had been excluded, we do not believe there is a reasonable possibility that the jury would have reached a different verdict regarding whether the larceny of the vans was a felony or a misdemeanor.

Finally, defendant argues alternatively that Mr. MacLenan's and Ms. Welter's testimony regarding the value of their vehicles improperly "invaded the jury's province as the fact-finder." Our Supreme Court has held, however, that "the owner of property is competent to testify as to the value of his own property even though his knowledge on the subject would not qualify him as a witness were he not the owner." *Responsible Citizens in Opposition to Flood Plain Ordinance v. City of Asheville*, 308 N.C. 255, 270, 302 S.E.2d 204, 213 (1983). *See also White v. Reilly*, 15 N.C. App. 331, 335-36, 190 S.E.2d 303, 306 (1972) (holding that owner of car could testify as to value of his car and weight to be given testimony was for jury to decide). We, therefore, hold that the trial court did not err in admitting the testimony of Mr. MacLenan, Ms. Welter, and Mr. Cooper.

II

[2] Defendant also contends that the trial court erred in sustaining the State's objection to testimony by defendant's expert witness, Kos Jackson, a used car salesman, about the value of the Accord if it had been junked and sold for parts. After testifying that fair market value and what a person would pay for a car were different issues, Mr. Jackson testified that a 1993 Honda Accord with normal mileage would have a retail value of $2,000.00, but would be worth only $200.00 to $300.00 if not running or $1,000.00 to $1,200.00 if "operable in rough condition." He was then asked what the value would be if "junked and sold for parts." The trial court sustained the State's objection to the question. The court also sustained the State's objection to the next question asking Mr. Jackson for his opinion of the value of the 1993 Honda Accord if, as Mr. MacLenan had described it, it was not running, a headlight was out, and it had bad tires.

Defendant did not make an offer of proof at trial so we do not know what Mr. Jackson would have testified if he had answered. "In order to preserve the exclusion of evidence for appellate review, 'the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance

of the evidence is obvious from the record.' " *State v. Barton*, 335 N.C. 741, 749, 441 S.E.2d 306, 310 (1994) (quoting *State v. Simpson*, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985)). The Supreme Court has explained:

> The reason for such a rule is that the essential content or substance of the witness' testimony must be shown before we can ascertain whether prejudicial error occurred. In the absence of an adequate offer of proof, [w]e can only speculate as to what the witness' answer would have been.

*Id.*, 441 S.E.2d at 310-11 (internal citations and quotation marks omitted). Defendant, therefore, failed to properly preserve this issue for appellate review.

In any event, the first question did not seek relevant evidence. The term "value" as used in N.C. Gen. Stat. § 14-72, the larceny statute, "means fair market value." *State v. Cotten*, 2 N.C. App. 305, 311, 163 S.E.2d 100, 104 (1968). *See also State v. Morris*, 79 N.C. App. 659, 661, 339 S.E.2d 834, 835 ("The proper measure of value is the price the stolen goods would bring in the open market in the condition they were in at the time they were stolen . . . ."), *rev'd in part on other grounds*, 318 N.C. 643, 350 S.E.2d 91 (1986). The value of the Accord if it were junked and sold for parts would not be relevant under the larceny statute.

As for the second question, defendant cannot demonstrate prejudice. Mr. Jackson had already testified that a 1993 Honda Accord that did not run and was in poor condition would be worth only $200.00 to $300.00. Defendant does not explain why, in light of that testimony, he was prejudiced by not being able to ask the value of Mr. MacLenan's 1993 Honda Accord if it was not running, had a headlight out, and had bad tires. Any error in sustaining the objection was, therefore, harmless.

### III

**[3]** Finally, defendant argues—and the State concedes—that the trial court's award of restitution to Ms. Welter is not supported by competent evidence. In *State v. Shelton*, 167 N.C. App. 225, 233, 605 S.E.2d 228, 233 (2004) (quoting *State v. Wilson*, 340 N.C. 720, 726, 459 S.E.2d 192, 196 (1995)), this Court stressed that " '[t]he amount of restitution recommended by the trial court must be supported by evidence adduced at trial or at sentencing.' " The Court held that "[t]he

unsworn statement of the prosecutor is insufficient to support the amount of restitution ordered." *Id.*

In the judgment for larceny of Ms. Welter's vans, the trial court ordered defendant to pay restitution in the amount of $8,277.00. The trial court based this amount on the unverified Restitution Worksheet submitted by the State. The evidence at trial was, however, that the two vans were worth $1,200.00 to $1,400.00. Therefore, this Court vacates the order of restitution.

No error as to trial; vacated as to restitution.

Chief Judge MARTIN and Judge ELMORE concur.