An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-890
NORTH CAROLINA COURT OF APPEALS

Filed: 21 January 2014

STATE OF NORTH CAROLINA

v.                       Mecklenburg County
                            Nos. 11 CRS 55572–73

ELIZIAH SANFORD


Appeal by defendant from judgment entered 3 April 2012 by Judge W. Robert Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 30 December 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General Kimberly A. D'Arruda, for the State.*
>
> *William B. Gibson for defendant-appellant.*


HUNTER, JR., Robert N., Judge.


A jury found defendant guilty of felonious larceny and felonious possession of stolen goods, whereupon he pled guilty to attaining habitual felon status. The trial court arrested judgment on the possession of stolen goods charge and sentenced defendant to an active prison term of 88 to 115 months. Defendant gave notice of appeal in open court.

Thaddeus Johnson, an employee of Norfolk Southern Railway Company ("Norfolk Southern"), was approached by defendant while working near an O-line switch in Charlotte on 30 June 2011. Defendant asked Johnson about a pile of six switch heaters that were lying approximately twenty feet from the tracks while workers performed maintenance on the switch. The heaters were ten feet in length and, when in use, were bolted to the side of the tracks to keep snow and ice off the switches in cold weather. Johnson described them as "piece[s] of pipe with holes in them . . . [they] looked like a gas grill, but they're real long, and . . . square[.]" The heaters were connected by hoses and piping to a propane tank.

Defendant asked Johnson if the switch heaters were "any good," to which he replied, "[O]h, yeah, they're really good. We're using them. I mean, we're going to put them back on our switch sometime later in the week." Johnson left the area for approximately ninety minutes to have lunch. When he returned, he saw that "defendant had another man in a pickup truck. They were loading the rail heaters up and they w[ere] taking off." Defendant was in the truck bed holding the rail heaters, and his associate was driving "north down a dirt road toward 36th

Street." Neither Johnson nor anyone at Norfolk Southern gave defendant permission to take the switch heaters.

Johnson immediately reported the theft to track supervisor Richard Snider, who in turn notified Special Agent Joseph Talley of the Norfolk Southern Police Department. As Talley drove past a metal recycling center between his office and 36th Street, he spied a "pickup truck approaching the scales to load in what appeared to be railroad switch heaters protruding from the back[.]" Talley approached the truck and spoke to the driver, Cornelius Penn. Defendant emerged from the scale house "where you clock in and weigh in at the recycling center" and walked over to the truck. Defendant told Talley they had obtained the switch heaters "from the railroad tracks." Talley directed defendant and Penn to return the items to where they had found them. Talley then contacted Snider and asked him to come to the O-line switch, where Snider saw "a pickup truck there that had switch heaters . . . in the back of it." Still attached to the heaters were "the brackets, the piping, the hoses. Everything that is associated with them." Although they had no serial numbers or identifying marks, Snider identified the heaters as "the same thing" Norfolk Southern used at the O-line switch.

They were subsequently reinstalled and continued to work properly at the time of defendant's trial in April 2012.

Defendant first argues that the trial court erred in denying his motion to dismiss the charges of felonious larceny and felonious possession of stolen goods, absent substantial evidence that the value of the property in question exceeded $1,000. While conceding the State's proof was sufficient to establish the misdemeanor versions of larceny and possession of stolen goods, defendant insists that State failed to establish the fair market value of the used switch heaters at the time they were stolen on 30 June 2011.

In order to overcome a motion to dismiss a charge of felonious possession or felonious larceny of stolen goods under N.C. Gen. Stat. §§ 14-71.1, 14-72(a) (2013), the State must present substantial evidence that the defendant stole or possessed personal property having a value of more than $1,000. *See State v. Owens*, 160 N.C. App. 494, 500, 586 S.E.2d 519, 523–24 (2003); *State v. Jones*, 151 N.C. App. 317, 327, 566 S.E.2d 112, 119 (2002). "What constitutes substantial evidence is a question of law for the court. . . . Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Olson*, 330 N.C.

557, 564, 411 S.E.2d 592, 595 (1992). For purposes of our review, we "must examine the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference and intendment that can be drawn therefrom." *Id.*

"The term 'value' as used in N.C. Gen. Stat. § 14-72, the larceny statute, 'means fair market value.'" *State v. Dallas*, 205 N.C. App. 216, 223, 695 S.E.2d 474, 479, (quoting *State v. Cotten*, 2 N.C. App. 305, 311, 163 S.E.2d 100, 104 (1968)), *disc. review denied*, 364 N.C. 604, 703 S.E.2d 737 (2010). "[I]n the case of common articles having a market value," value denotes "the price which the subject of the larceny would bring in open market . . . at the time and place of the theft, and in the condition in which it was when the thief commenced the acts culminating in the larceny." *State v. Dees*, 14 N.C. App. 110, 112, 187 S.E.2d 433, 435 (1972) (internal citation and quotation marks omitted). However, "where stolen property is not commonly traded and has no ascertainable market value, a jury may infer the market value of the stolen property from evidence of the replacement cost." *State v. Helms*, 107 N.C. App. 237, 240, 418 S.E.2d 832, 833 (1992). "The State is not required to produce direct evidence of value to support the conclusion that the

stolen property was worth over $1,000.00, provided that the jury is not left to speculate as to the value of the item." *State v. Rahaman*, 202 N.C. App. 36, 47, 688 S.E.2d 58, 66, *disc. review denied*, 364 N.C. 246, 699 S.E.2d 642, *abrogated in part by State v. Tanner*, 364 N.C. 229, 695 S.E.2d 97 (2010) (internal citation and quotation marks omitted).

Defendant emphasizes that the State did not present direct evidence of the present market value of the used switch heaters and attachments as of 30 June 2011. Snider testified that "when I order four of them, just the heaters themselves, they're around $2,000." He did not know when Norfolk Southern had purchased the heaters stolen by defendant; nor was there a specific replacement schedule. According to Snider, "[s]ome of them have to be replaced after five or six years, some of them maybe less than that." Asked to estimate "the value of all the various attachments that came with the switch heaters[,]" he averred that "it would be at least 2- or 3,000, 4,000, $5,000." *See generally State v. Boone*, 39 N.C. App. 218, 221, 249 S.E.2d 817, 820 (1978) ("The general rule in North Carolina is that a witness who has knowledge of value gained from experience, information and observation may give his opinion of the value of specific personal property."), *modified on other grounds*, 297

N.C. 652, 256 S.E.2d 683 (1979). Special Agent Talley likewise testified that he contacted Norfolk Southern's supplier and obtained a quote of $6,255.60 for "the same items" removed by defendant on 30 June 2011.

The State's proffer was sufficient to allow a reasonable juror to find that the value of the stolen property exceeded $1,000. Given evidence of a replacement cost in excess of $6,000 and that the switch heaters continued to operate properly ten months after the theft, the jury was not left merely to speculate as to their value. *See State v. Davis*, 198 N.C. App. 146, 151–52, 678 S.E.2d 709, 714 (2009). Nor was there any indication that used switch heaters and their accessories were commonly traded such that their actual market value was readily ascertainable. We note that, unlike the cases cited by defendant, the trial court also instructed the jury on the lesser included offenses of non-felonious possession of stolen goods and larceny. *E.g.*, State v. Morris, 318 N.C. 643, 646, 350 S.E.2d 91, 93 (1986) ("[T]he jury *could have inferred* from this evidence that the fair market value of the tools was less than their replacement cost, and also that it might well have concluded that this value was not more than $[1,000]. Under these circumstances, it was error for the trial judge not to

have charged on misdemeanor larceny when properly requested."(emphasis added)). Accordingly, defendant's argument is overruled.

Defendant next claims the trial court abused its discretion in failing to exclude State's Exhibit 1 from evidence as a sanction for untimely discovery. The State produced a CD containing five photographs of the switch heaters, taken between the date of the pretrial readiness conference and defendant's trial, depicting the devices in their operational position attached to the tracks. During a recess in jury selection, defense counsel objected to the photographs on the ground that the prosecutor had failed to disclose them until the morning of trial. *See* N.C. Gen. Stat. § 15A-903(a)(1)(d) (2013). The prosecutor acknowledged that he inadvertently failed to attach the photographs to an earlier email to defense counsel. After hearing from the parties, the court allowed the State to use the photographs to illustrate witness testimony. Defendant contends that the introduction of the photographs amounted to an "ambush" and that they portrayed the switch heaters to the jury as "equipment worth considerably more than then fair market value of the items recovered by Officer Talley on the day of [d]efendant's arrest."

The record on appeal includes a "stipulation" that "all Exhibits introduced at trial are incorporated by reference into this Record on Appeal and will be provided by the Clerk of Superior Court of Mecklenburg County upon the request of either party or the appellate Court."  As we have previously noted:

> "It is the duty of the appellant to see that the record is properly [prepared] *and transmitted*." *Hill v. Hill*, 13 N.C. App. 641, 642, 186 S.E.2d 665, 666 (1972). The appellant also has the duty to ensure that the record is complete and contains the materials asserted to contain error. *Pharr v. Worley*, 125 N.C. App. 136, 139, 479 S.E.2d 32, 34 (1997). Rule 9 of the North Carolina Rules of Appellate Procedure requires that "exhibit[s] offered in evidence and *required for understanding of errors assigned* shall be filed in the appellate court." N.C. R. App. P. 9(d)(2) (2008).

*State v. Hall*, 187 N.C. App. 308, 324, 653 S.E.2d 200, 211-12 (2007) (first emphasis added).  We have received no exhibits in this case; nor is there any indication that defendant requested the clerk of superior court to transmit the contested photographs to this Court.  Therefore, we are unable to examine the photographs of the switch heaters to determine their prejudicial impact, if any. *See* N.C. Gen. Stat. § 15A-1443(a) (2013).  We note that the trial court admitted the photographs

solely for illustrative purposes and instructed the jury that they could "not be considered by you for any other purpose."

"[W]hether a party is issued sanctions for failure to comply with discovery rules is in the discretion of the trial court. . . . [The] discretionary rulings of the trial court will not be disturbed on the issue of failure to make discovery absent a showing of bad faith by the state in its noncompliance with the discovery requirements." *State v. East*, 345 N.C. 535, 552, 481 S.E.2d 652, 663-64 (1997) (internal quotation marks and citation omitted). Absent any allegation or indicia of bad faith by the prosecutor, we discern no abuse of discretion by the trial court.

NO ERROR.

Chief Judge MARTIN and Judge DILLON concur.

Report per Rule 30(e).